Paul Eric OTTESON, Plaintiff,

v.

IOWA DISTRICT COURT FOR LINN COUNTY, Defendant.

No. 88–1520.

Supreme Court of Iowa.

July 19, 1989.

Gary L. Robinson of Klinger, Robinson & McCuskey, Cedar Rapids, for plaintiff.

Thomas J. Miller, Atty. Gen., Julie A. Halligan, Asst. Atty. Gen., Denver D. Dillard, Co. Atty., and Scott C. Peterson, Asst. Co. Atty., for defendant.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

Paul Otteson was charged with five counts of indecent contact with a child in violation of Iowa Code section 709.12 (1987). The district court granted a protective order which required Otteson to be placed behind a one-way mirror during the discovery depositions of the alleged victims. The court also refused Otteson access to videotapes of the child witnesses. Otteson petitioned for a writ of certiorari

to challenge these orders, and the writ was granted. We now annul the writ.

The alleged victims in this case were first and second-grade students in a class taught by Otteson. When it was suspected that students were being sexually abused in the classroom, some of the children were taken to a child abuse prevention center where videotaped interviews were conducted. Charges against Otteson followed, and the victims were listed in the minutes of testimony. On Otteson's application to the court, depositions of these children were scheduled.

Before the depositions, the State requested an order requiring that the depositions be taken with Otteson placed behind a one-way mirror. Otteson resisted, claiming deprivation of his right of confrontation. In a separate application, Otteson requested an order compelling production by the State of the videotapes of the "nonminuted" children, those who had been interviewed but not listed in the minutes of testimony. The district court sustained the State's application for the order regarding the mirror. On Otteson's application, the court required the State to produce the videotapes of the minuted witnesses but denied it as to the nonminuted witnesses.

## I. *Constitutionality of Section 910A.14.*

Iowa Code section 910A.14, dealing with protection of child witnesses, provides in relevant part that

> [t]he court may require a party be confined to an adjacent room or behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party. However, if a party is so confined, the court shall take measures to insure that the party and counsel can confer during the testimony and shall inform the child that the party can see and hear the child during testimony.

Iowa Code § 910A.14(1). Otteson claims this section is unconstitutional as applied to this case. The court in ruling on the protective order, however, made it clear that it

was not relying on section 910A.14 but rather on the court's general authority to control pretrial discovery. Because section 910A.14 was not applied, we do not address the question of its constitutionality.

## II. *Right of Confrontation.*

Otteson contends that the district court's issuance of the protective order violated the spirit, if not the letter, of the law as set forth in *Coy v. Iowa*, 487 U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). In *Coy*, the Supreme Court held that the use of a screen at trial which allowed the defendant to see a witness without allowing the witness to see the defendant violated the defendant's right of confrontation. It should be noted, however, that *Coy* involved the use of a screen at trial, not during discovery proceedings.

It is said that the sixth amendment confers "a right to meet face to face all those who appear and give evidence at trial," *California v. Green*, 399 U.S. 149, 175, 90 S.Ct. 1930, 1944, 26 L.Ed.2d 489, 506 (1970) (Burger, C.J., concurring), and "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy*, 487 U.S. at ——, 108 S.Ct. at 2800, 101 L.Ed.2d at 864.

When the judicial proceeding is investigative, however, rather than adjudicatory, the confrontation clause does not apply. As the Supreme Court has said in discussing an analogous case involving the right of confrontation before a grand jury,

> we think it would be profitable ... to discuss the oldest and, perhaps, the best known of all investigative bodies, the grand jury. It has never been considered necessary to grant a witness summoned before the grand jury the right to refuse to testify merely because he did not have access to the identity and testimony of prior witnesses. Nor has it ever been considered essential that a person being investigated by the grand jury be permitted to come before that body and cross-examine witnesses who may have accused him of wrongdoing. Undoubtedly, the procedural rights claimed by the respondents have not been extend-

ed to grand jury hearings because of the disruptive influence their injection would have on the proceedings, and also because the grand jury merely investigates and reports. It does not try. *Hannah v. Larche*, 363 U.S. 420, 448–49, 80 S.Ct. 1502, 1518, 4 L.Ed.2d 1307, 1325 (1960).

■ Otteson agrees that *Coy* involves a trial right, but he contends that no distinction should be made between discovery and evidentiary depositions and that *Coy*'s rationale should be applicable to any deposition taken in conjunction with a criminal case. He argues that, even though the depositions were not taken for use at trial, they were nevertheless a "stage of trial," during which a defendant must be present. *See* Iowa R.Crim.P. 25(1).

Otteson cites *State v. Turner*, 345 N.W.2d 552 (Iowa App.1983), as authority for this argument. *Turner*, however, is distinguishable. In that case, a witness's deposition was taken before trial to perpetuate his testimony, and it was read into evidence at the trial. Turner had not been present for the deposition; in fact, he was not even informed that it was to be taken. Turner was convicted, and on appeal, the court of appeals held that "a deposition where testimony is taken for introduction at trial" is a stage of the trial within the meaning of rule 25(1). *Turner*, 345 N.W.2d at 559. In the present case, the deposition was taken for discovery only; it was not attempted to be used at trial.

We conclude that a discovery deposition not taken for use at trial is not a "stage of trial," and Otteson's right of confrontation was not abridged by the use of the mirror at the deposition. His argument that even a discovery deposition raises a right of confrontation because it is a part of the criminal prosecution is unpersuasive. It is no more a part of that process than is the grand jury, as to which the Supreme Court has held there is no right of confrontation. *Hannah*, 363 U.S. at 448–49, 80 S.Ct. at 1518, 4 L.Ed.2d at 1325. The State agrees that, if these depositions had been attempted to be introduced into evidence, *Coy* and the defendant's right of confrontation

would come into play. That, however, is not the case here.

### III. *Abuse of Discretion.*

■ Under rule of criminal procedure 13(6)(a), the trial court may,

[u]pon a sufficient showing[,] [ ] at any time order that the discovery or inspection be denied, *restricted* or deferred, *or make such other order as is appropriate.*

(Emphasis added.)

In the instant case, the trial court stated that [it] must concern itself with the potential trauma suffered by child victims from exposure to the unknown and frightening workings of the legal system. This Judge is convinced that it is partly for that reason that the Court is authorized to appoint guardians ad litem for children to assist in protecting the child victim's interest through the criminal process.

Considerable discretion is vested in the trial court in the area of discovery. *See generally State v. Groscost*, 355 N.W.2d 32, 34–35 (Iowa 1984); *State v. Kase*, 339 N.W.2d 157, 159 (Iowa 1983). Otteson contends, however, that the court's discretion was abused because the mirror order was entered without finding facts establishing its necessity.

■ An abuse of discretion will be found only when the discretion is exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *See Rowen v. LeMars Mut. Ins. Co.*, 357 N.W.2d 579, 583 (Iowa 1984). We believe the court, in its statements set out above, demonstrated a "sufficient showing" under rule 13(6)(a) to restrict the discovery depositions by the use of a one-way mirror.

### IV. *In Camera Inspection.*

A criminal defendant is entitled to exculpatory evidence, or any evidence which may lead to the discovery of exculpatory or favorable evidence. *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218–19 (1963); *State v. Johnson*, 298 N.W.2d 293, 294 (Iowa 1980).

Otteson's counsel inadvertently viewed two of the nonminuted witnesses' videotapes and contends that they were exculpatory, revealing evidence of coaching and leading the children. He requested access to all the other videotapes, claiming that they might also be exculpatory. The court decided, based upon an *in camera* viewing of the tapes, that they contained no exculpatory material. Otteson contends this was error.

Otteson's contention that the videotapes of the nonminuted witnesses might show coaching or coercion does not appear to be borne out by the record. Following its *in camera* examination of the videotapes, the court stated:

> The court has now viewed the videotapes of the children who were interviewed but not minuted in the State's minutes of testimony and has determined that there is no exculpatory information in the videotapes requiring their production for the defendant. In making this determination, the court paid particular note to the manner in which the interviews were themselves conducted attempting to discern whether the children were being led or coerced, even subtly, in providing information to the child protective interviewer. The court has not found such to be the case in the tapes it has viewed.

We have held that in making an *in camera* inspection of evidence, it is the duty of the *court* to make the determination whether the material is exculpatory and therefore subject to the *Brady* rule. *See,* e.g., *State v. Johnson,* 272 N.W.2d 480 (Iowa 1978). In many cases, it would be inadvisable to allow examination of evidence by counsel, in the *in camera* proceeding, for security or other reasons. *Cf. Howard v. State,* 439 N.W.2d 193, 196 (Iowa 1989) (prison discipline case; confidential information denied to defense counsel). But it is not claimed that such factors exist in this case. Here it would perhaps have been preferable to allow defense counsel to participate in the *in camera* examination.

■ This certiorari action is only an early stage of this prosecution, and the trial court will likely entertain a renewed motion to examine the videotapes and make a record, if necessary, to support any order denying counsel's access to the videotapes in question during the *in camera* examination. Any order denying access to defense counsel shall require the State to preserve the evidence during the time allowed for direct appeal to permit appellate review of the court's exercise of discretion. *Cf.* Fed. R.Crim.P. 26.2(c) (preservation of witness statements).

With that suggestion, we annul the writ.

WRIT ANNULLED.