Roger Gene VAN HOFF,
Applicant–Appellant,

v.

STATE of Iowa, Resister–Appellee.

No. 87–1758.

Court of Appeals of Iowa.

Aug. 23, 1989.

Robert E. Walker, Fort Dodge, for applicant-appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., and James C. Hudson, Pocahontas County Atty., for resister-appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

Shortly after his live-in girlfriend told him she was moving out, Roger Van Hoff found his shotgun and started firing. Both his father and his son were killed as a result. Van Hoff claims that at the time of the shootings he was depressed, confused, sleep-deprived, and under the influence of alcohol and amphetamines, and that he could not clearly remember what happened until shortly before trial when his memory returned. His attorneys having prepared a defense based on his loss of memory requested a continuance to allow them to develop a new theory based on the return of his memory. The district court denied that motion, and in due course a jury found Van Hoff guilty of two counts of first-degree murder. His conviction was affirmed in *State v. Van Hoff*, 371 N.W.2d 180 (Iowa App.1985), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 578 (1985). Van Hoff subsequently applied for postconviction relief but it was denied.

Van Hoff's claims of ineffective assistance are grounded in seven allegations: 1) his trial attorneys were rendered ineffective by the trial court's denial of a continuance; 2) his trial attorneys presented no meaningful defense based on intoxication and/or diminished capacity or insanity; 3) his trial attorneys failed to explore the issue of whether the entry by police into Van Hoff's house on the day of the shooting constituted a warrantless search requiring the suppression of the fruits of that search; 4) his trial attorneys failed to challenge the admissibility of statements made by Van Hoff to police officers at the scene of the shootings; 5) his trial attorneys failed to present an adequate argument for the suppression of statements given by Van Hoff at the hospital; 6) his

trial attorneys prejudiced his case when they took depositions in his absence and without his having waived his right to be present at this stage of the proceedings; and 7) his trial attorneys failed to challenge the prosecutor's impermissible comments during closing argument that called the jury's attention to Van Hoff's failure to testify.

Van Hoff asserts that his appellate counsel also provided ineffective assistance because of his failure to raise any of these issues on appeal.

 Our ultimate concern in claims of ineffective assistance is with the "fundamental fairness of the proceeding whose result is being challenged." *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987), *quoting Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984). We review de novo the totality of the circumstances relating to counsel's conduct, keeping in mind the presumption that counsel performed competently. *Risdal*, 404 N.W.2d at 131. The burden is on the defendant to prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted.

 Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts violation of constitutional safeguards—such as ineffective assistance of counsel—we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.*

I. *Denial of Motion for Continuance.* Van Hoff contends that the trial court's denial of his motion for a continuance rendered his trial attorneys constitutionally ineffective in presenting his defense. Specifically, Van Hoff asserts that his trial attorneys could have, and would have, been effective and able to put on a proper defense of intoxication and/or diminished responsibility or insanity if the continuance had been allowed. He also argues that his

appellate attorney was constitutionally ineffective in failing to address on appeal the issue of whether or not the denial of Mr. Van Hoff's motion for a continuance was an abuse of the trial court's discretion which denied him effective assistance of counsel.

On Tuesday, August 23, 1983, the day the trial was scheduled to begin, Van Hoff's attorneys sought a continuance of the trial. The attorneys informed the court that the recent return of Van Hoff's memory of the incident necessitated a change in the defense they would pursue. The attorneys argued that additional time was needed to prepare for presentation of the new defense.

The attorneys had originally intended to rely on a defense which was predicated on the basis that Mr. Van Hoff had fallen into a fit of rage or passion, had loaded a weapon, and had indiscriminately began firing it. Their theory of the case was nonintentional, albeit reckless, shooting. According to Van Hoff's attorneys, the night before the trial was to begin he informed them that he recalled shooting his father and son and that he had believed shooting his family was necessary to end his father's pain and to prevent the family from being split up.

■■ A motion for a continuance shall not be granted except upon a showing of good and compelling cause. Iowa R.Crim.P. 8.1. To obtain a continuance, a moving party must make a showing that substantial justice will be more nearly obtained by granting the continuance. *State v. Ware*, 338 N.W.2d 707, 714 (Iowa 1983). Generally, continuances will not be granted for want of defense preparation in the absence of a showing of good excuse. *State v. Youngbear*, 229 N.W.2d 728, 733 (Iowa), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 455, 46 L.Ed.2d 390 (1975). When a defendant claims he needs a continuance for further trial preparation because of some type of surprise or change in circumstances regarding the case, denial of a continuance is proper if the record rebuts the surprise claim. *See State v. Slayton*, 417 N.W.2d 432, 435 (Iowa 1987). A ruling on a motion for a continuance is a matter committed to the sound discretion of the trial court and will be reversed only when an abuse of discretion is shown. *Id.* Abuse of discretion is a difficult standard to meet. *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985).

■■ The record in this case reveals that on the day of the murders, November 5, 1982, Van Hoff made statements in the hospital about discussions he allegedly had with his father about killing the entire family. The fact that Van Hoff on the eve of trial suddenly "recalled" that he had a belief that he needed to kill his entire family to save them from some fate he felt was going to befall them, should not have come as a great surprise to his attorneys in light of those prior statements.

Van Hoff's attorneys sought a court-ordered psychiatric examination. This request was granted and on May 5, 1983, Dr. Taylor examined Van Hoff. On June 22, 1983, Van Hoff's attorneys gave notice of their intent to rely on the defense of insanity and diminished capacity. Yet two months later on August 23rd, Van Hoff's attorneys moved for a continuance so that they might investigate the possibility that at the time of the commission of the crime Van Hoff might have been operating "under a mental disease or defect." It is evident from the record that the attorneys had earlier recognized and considered the possibility of relying on such a defense. Van Hoff's revelations to his attorneys on the eve of trial were not of such a nature that additional time was necessitated to allow them to prepare a defense based on Van Hoff's mental condition.

Similarly, the trial court's denial of a continuance did not render Van Hoff's counsel unable to render a defense based on his intoxication and/or diminished capacity. Evidence regarding Van Hoff's condition on the day of the murder was available long before Van Hoff's memory recall on the eve of trial. Test results showing the alcohol content of his urine sample and statements from hospital and police personnel who dealt with Van Hoff were much more important in preparing a defense based on intoxication and/or diminished ca-

pacity than any of the things remembered by Van Hoff and revealed to his attorneys on August 22, 1983. Van Hoff's attorneys were not rendered constitutionally ineffective and unable to develop a defense based on intoxication by the denial of their motion for a continuance.

In sum, the trial court acted within its discretion by denying the motion for a continuance. Van Hoff's attorneys had adequate time to prepare his case and they were allowed sufficient time within which to develop their trial defenses. Likewise, appellate counsel's decision not to appeal the denial of the continuance does not render him constitutionally ineffective.

II. *Intoxication/Diminished Capacity Defenses.* Van Hoff challenges the postconviction relief court's finding that the trial attorneys were effective in their representation of defendant and fully presented the defense of intoxication and/or diminished capacity or insanity.

Van Hoff's attorneys requested that the jury be instructed on the defenses of insanity and diminished responsibility. The trial court concluded that the evidence presented at trial was not substantial enough to warrant submitting these issues to the jury. The trial court did, however, instruct the jury that the defendant's intoxication could be considered in determining whether the State had proven premeditation, willfulness, deliberation, and specific intent to kill.

A review of the record reveals that the defense did not present any evidence but for the admission of two laboratory reports. One report included the results from a test measuring the alcohol content of Van Hoff's urine on the day of the murders. The other report contained the results of a gunshot residue test performed on Rania Green. A transcript of closing arguments reveals that the defense strategy was to concede that Van Hoff had fired the weapon that killed his son and father but to challenge whether Van Hoff had the requisite intent to commit first-degree murder.

 Van Hoff specifically objects to his counsel's failure to put him, lay wit-

nesses, and expert witnesses on the stand to testify with regard to his intoxication and/or diminished capacity or insanity. Counsel's duty to investigate and prepare a defense is not limitless and does not require counsel to pursue each possible witnesses and delve into every line of inquiry. *Heaton v. State,* 420 N.W.2d 429 (Iowa 1988). The record reveals that while a few witnesses may have been available to testify about Van Hoff's consumption of alcohol or drugs on the day of the murders, there were also a number of witnesses who could have testified that he did not seem intoxicated that day. When counsel makes a reasonable tactical decision, this court will not engage in second-guessing. *Fryer v. State,* 325 N.W.2d 400, 413 (Iowa 1982). Van Hoff's counsel did not render ineffective assistance with regard to a defense based on intoxication.

 Likewise, Van Hoff's counsel did not err in not introducing expert evidence on the issue of Van Hoff's mental condition. A psychiatric examination of Van Hoff had been performed by Dr. Taylor and it was the doctor's conclusion that Van Hoff suffered from no mental disorder other than borderline mental retardation. Van Hoff argues that Dr. Taylor's diagnosis would have differed if information regarding Van Hoff's history as an abused child, of his marital problems, and of his history of alcohol and drug abuse had been conveyed to the doctor. Van Hoff presented no evidence at the postconviction hearing as to the significance of such information. This court cannot find that Van Hoff's attorneys erred in this regard or even that such conduct prejudiced Van Hoff.

Only a defendant can choose whether or not to testify in a criminal case. *Schrier v. State,* 347 N.W.2d 657 (Iowa 1984). Van Hoff points to nothing in the record which would indicate that his attorneys usurped this decision and denied him his right to testify.

Van Hoff's reliance on *Davis v. State of Ala.,* 596 F.2d 1214 (5th Cir.1979), is misplaced in this case. In *Davis,* the defendant's attorneys were determined to have

rendered ineffective assistance because they failed to investigate potential defenses for the defendant. In Van Hoff's case, his attorneys obtained a psychiatric exam for him and they took numerous depositions before trial. Two months before trial, they had filed their notice of intent to inform the prosecution that they might rely on the defenses of insanity and diminished capacity. Before the State rested its case the defense attorneys indicated that although they had not yet made a firm decision, they might call an expert on the intoxication defense. It is without question that Van Hoff's attorneys were aware of, and had investigated, the various defenses available to him. If they chose to forego these defenses in favor of others, it was undoubtedly due to the strong case the prosecution had established. Van Hoff's attorneys cannot be faulted for relying on the defense strategy which had the most likely chance of being accepted by the jury. The court finds that neither Van Hoff's trial or appellate attorneys were constitutionally ineffective with regard to their presentation of intoxication or diminished capacity defenses.

 III. *Warrantless Search.* Van Hoff argues that his trial and appellate attorneys were constitutionally ineffective for failing to challenge the warrantless search of his home which occurred on November 5, 1982. Warrantless searches and seizures are per se unreasonable unless they come within a recognized exception to the warrant requirement. *State v. Holtz,* 300 N.W.2d 888, 892 (Iowa 1981). Warrantless searches are per se unreasonable unless one of three exceptions are present: (1) the search is incident to an arrest; (2) the search is consented to; or (3) exigent circumstances require an immediate search. *State v. Folkens,* 281 N.W.2d 1, 3 (Iowa 1979). The burden is on the State to justi-

fy an entry under one of these exceptions. *Holtz,* 300 N.W.2d at 892.

 The record reveals that the search of Van Hoff's home was neither consented to or incidental to his arrest. To be constitutional, the search in this case must have been the result of exigent circumstances. Exigent circumstances sufficient to justify a search and seizure without a warrant usually include danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed. *State v. Jackson,* 210 N.W.2d 537, 540 (Iowa 1973).

 Various factors which indicate the existence of exigent circumstances have been set forth [1], however, they are not all-inclusive. *Holtz,* 300 N.W.2d at 893. The ultimate issue is whether an emergency or urgent need for the warrantless entry existed. *Id.*

 When officers arrived at the scene of the shooting, they found two bodies outside of the house. Van Hoff emerged from the house without the weapon and his arms were raised. Blood was dripping from his cut wrists. Van Hoff told police that no one was left in the house. Van Hoff told officers at the scene that his girlfriend, Rania Green, had done the shooting and had cut him. Rania Green's whereabouts were unknown to police at the scene. It was evident that the police were concerned that the shooter might yet be in the house. Furthermore, one officer at the scene who was familiar with the family was concerned with the whereabouts of Van Hoff's unaccounted-for children. While Van Hoff said no one was in the home, his injured and somewhat emotional state would render his statement to be less than reliable. The officers at the scene conducted a search of the home to ensure that neither the shooter or other victims were inside. The circum-

---

1. (1) a grave offense is involved;
 (2) the suspect is reasonably believed to be armed;
 (3) there is probable cause to believe the suspect committed the crime;
 (4) there is strong reason to believe he is on the premises;

 (5) there is a strong likelihood of escape if not apprehended; and
 (6) the entry, though not consented to, is peaceable.
*Holtz,* 300 N.W.2d at 893.

stances of this case make this warrantless search constitutional. While Van Hoff is right in that there is no "murder scene" exception to the warrant requirement, *Mincey v. Arizona*, 437 U.S. 385, 395, 98 S.Ct. 2408, 2415, 57 L.Ed.2d 290, 301–02 (1978), police at a homicide scene "may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Id.* at 392, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. *See also State v. Emerson*, 375 N.W.2d 256, 258–59 (Iowa 1985) (citing this *Mincey* language with approval).

Van Hoff's trial and appellate counsel did not err in failing to challenge the constitutionality of the initial search of his home. It was a search justified by exigent circumstances and Van Hoff's counsel violated no duty in failing to challenge it.

IV. *Statements Made at Murder Scene.* Van Hoff contends that his trial and appellate counsel were ineffective for failing to challenge the admissibility of statements Van Hoff made at the murder scene. Van Hoff argues that he was in custody at the scene and that the statements were elicited in violation of his constitutional rights because he was not first informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■■■ It is well established that a defendant who is placed in custody must be given *Miranda* warnings prior to being interrogated. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* only applies when a defendant is interrogated while in custody. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977); *State v. Cook*, 330 N.W.2d 306, 311–13 (Iowa 1983). Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Custodial interrogation does not include investigatory questioning without custody, *State v. McDonald*, 190 N.W.2d 402, 404 (Iowa 1971),

basic identification questioning, *State v. Beatty*, 305 N.W.2d 496, 499 (Iowa 1981), or general on-the-scene questioning. *State v. Brown*, 176 N.W.2d 180, 182 (Iowa 1970). To determine whether a person is in custody, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984). The court must determine whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983).

■■■■ The record reveals that when Van Hoff emerged from the house his wrists or arms appeared to be bleeding. When Officer Stowell attempted to bandage the wounds, Van Hoff pulled away and attempted to return to the scene. Van Hoff became quite loud and combative and indicated that he wanted to return to the scene to see his son. Van Hoff's insistence to do so forced the police to physically restrain him. Van Hoff had informed the police that Rania Green had done the shooting and at that time her whereabouts were unknown. Until the house had been searched it was not unreasonable for the police to fear that the shooter may still be in the residence. Van Hoff was restrained, not to be held in "custody," but for his own safety. Much like firefighters physically prevent residents from returning to their burning homes, Van Hoff was similarly constrained for his own safety. Furthermore, the officers had an interest in preventing anyone, including Van Hoff, from entering the crime scene and risking the possible destruction of evidence.

Nothing in the record indicates that Van Hoff would not have been allowed to leave the area as long as he was not trying to return to the crime scene. A reasonable person in Van Hoff's place would have believed that he was being prevented from returning to the crime scene, but would not have concluded that he was in the custody of the police. This is further evidenced by the fact that no officer accompanied Van

Hoff when he was transported to the hospital. Any statements elicited from Van Hoff at this time were the result of general on-the-scene questioning and were not the product of custodial interrogation.

Van Hoff's trial and appellate counsel did not err in failing to challenge the custodial nature of his restraint at the scene and the admissibility of statements that resulted therefrom. Counsel did not fail to perform .an essential duty in this case.

V. *Suppression of Statement Given at Hospital.* Van Hoff asserts that the post-conviction relief trial court erred in finding that his trial attorneys adequately presented evidence in support of suppression of statements he made at the hospital. In addition, he argues that his appellate attorney was constitutionally ineffective for failing to present this issue on appeal.

Mr. Van Hoff entered the hospital at 4:23 p.m. At approximately 5:30 p.m., a police officer was sent to the hospital to watch over him. After Mr. Van Hoff was admitted to a hospital room, at approximately 6:00 p.m., his *Miranda* rights were read to him and the sheriff began interrogating him.

Van Hoff sets forth several factors and alleges that they demonstrate that he did not make a knowing, intelligent, and voluntary waiver of his rights as required under *Miranda.* Van Hoff relies on the following in support of his argument:

1) the hot temperature of the hospital room in which he was questioned;

2) his confusion and incoherence during the questioning;

3) his request for "help" during the questioning;

4) his low intelligence;

5) his consumption of alcohol on the day of the shootings;

6) his use of marijuana and amphetamines on the day of the shootings;

7) his lack of sleep;

8) that he was overborne by the interrogating officer due to his condition; and

9) that the interrogating officer and Van Hoff knew each other and the officer

used this relationship to elicit statements from Van Hoff.

■■■■■ The test for determining the admissibility of inculpatory statements is voluntariness. *State v. Munro,* 295 N.W.2d 437, 440 (Iowa 1980). Courts examine the totality of the circumstances to determine the voluntariness of statements. *Id.* The State must prove by a preponderance of evidence that such statements were voluntarily made. *State v. Jacoby,* 260 N.W.2d 828, 832 (Iowa 1977). This burden is heavy when a defendant is not represented by counsel in a custodial interrogation. *Id.*

■■■■■ Intoxication renders a statement inadmissible when the intoxication reaches the extent of incoherence or mania. *State v. Youngbear,* 229 N.W.2d 728, 736 (Iowa), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 455, 46 L.Ed.2d 390 (1975). Testimony from the police officers and hospital personnel reveals that Van Hoff did not appear drunk or incoherent despite his blood alcohol content of .14 percent.

■■■■ Mental subnormality does not in itself prevent statements from being voluntary unless it is sufficient to deprive the person involved of capacity to understand their meaning and effect. *State v. Conner,* 241 N.W.2d 447, 454 (Iowa 1976). Deficiencies like low intelligence are simply part of the totality of circumstances which must be considered in determining the voluntariness issue.

Van Hoff appears to be arguing that his requests for "help" in the interrogation were a request for counsel and that subsequent statements should not have been admissible at trial. The pertinent language from the interrogation is as follows:

OFFICER: Now you tell us the truth and lets stick to the story and we'll have it down.

VAN HOFF: I tell you the truth and you guys will try and help me right.

OFFICER: We'll do what we have too, Rog, if it means help, ah, thats what it will be.

VAN HOFF: I'll tell you the truth, I think I do need some help.

OFFICER: You do need some help. OK, let's go back to the beginning.

Van Hoff's request for help was directed to the officers—"you guys will try and help me right." His statements evince an interest in cooperating with the officers so that they will help him out.[2] His statements were not a request for counsel.

■ Van Hoff's allegation that he was overborne by the interrogating officer and that the officer inappropriately used the fact that he knew Van Hoff to elicit statements is without merit. The record reveals that the officers engaged in persistent and thorough interrogation; it does not reveal that Van Hoff's will was in any way overborne by the officer. Van Hoff offers only the allegation and no substantiation as to why the fact that an interrogating officer knew him would affect the voluntariness of his decision.

Many of the factors relied on by Van Hoff as evidence of his nonvoluntariness were countered by evidence which sustained the conclusion that he was coherent and not confused when he made his statements. Upon review of the totality of the circumstances, this court concludes that Van Hoff's counsel did not fail to perform an essential duty with regard to suppression of his statements made in the hospital. His trial counsel did an effective job in arguing to suppress the statements. Van Hoff's appellate counsel did not err in choosing not to appeal the issue.

VI. *Confrontation of Witnesses.* Van Hoff contends that his attorneys prejudiced his case and violated his constitutional right to confront witnesses by not ensuring his presence at the taking of depositions. The record reveals that thirty depositions were taken by Van Hoff's counsel. None of the depositions were used at trial other than for impeachment purposes.

A criminal defendant is to be present at every stage of the trial. Iowa R.Crim.P. 25. The Iowa Supreme Court has determined that a "stage of the trial" includes all pretrial proceedings where fact issues are presented or when their dispositions will be significantly aided by the defendant's presence. *State v. Foster,* 318 N.W.2d 176, 179 (Iowa 1982). Van Hoff relies on *State v. Turner,* 345 N.W.2d 552, 559 (Iowa App.1983), for the view that the taking of depositions is a stage of the trial. While this court did hold in *Turner* that the taking of a deposition, where testimony is taken for introduction at trial, is a "stage of trial" at which the defendant has a right to be present, *id.,* the factual setting in *Turner* involved a deposition that was specifically taken to perpetrate testimony and to be introduced at trial. The witness in *Turner* was in the military and would not be present for the trial. The record in *Turner* did not disclose that the defendant was ever given the opportunity to be present for the deposition. Clearly the defendant in that case was denied the opportunity to confront the witness.

■ A recent decision of the Iowa Supreme Court concluded that a discovery deposition not taken for use at trial is not a "stage of trial." *Otteson v. Iowa District Court,* 443 N.W.2d 726, 728 (Iowa 1989). In the case now before this court, the depositions were taken as discovery depositions and not to perpetrate the testimony of one who would be absent from the trial. None of the depositions in this case were introduced into evidence at the trial. One of the more important purposes of Iowa Rule of Criminal Procedure 25(1) is to protect the defendant's constitutional right of confrontation in presenting evidence from which the trier of fact determines guilt. *Id. See State v. Yaw,* 398 N.W.2d 803, 808 (Iowa 1987) (defense attorney's stipulation to admission of deposition wasn't barred because defendant had had opportunity to attend deposition and confront accusers and had voluntarily chosen not to do so).

In a recent decision, the United States Supreme Court also emphasized that the key aspect of the Confrontation Clause is the opportunity for effective cross-examination. *Kentucky v. Stincer,* 482 U.S. 730,

---

**2.** The trial court correctly found that no offers of leniency or preferential treatment were extended to Van Hoff from the officers.

739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631, 642 (1987) (defendant's absence from competency hearing for witness did not violate confrontation clause).

Van Hoff's absence from the depositions does not constitute the failure to perform an essential duty by his counsel.

VII. *Prosecutor's Closing Argument.* Van Hoff asserts that all of his prior attorneys failed to challenge the prosecutor's comments during closing arguments that allegedly called the jury's attention to Van Hoff's failure to testify. The statement of the prosecutor is as follows with the specifically-challenged language underscored:

Now a great deal of what was brought into this courtroom wasn't contradicted. A great deal of what was told to you as jurors, I think, you will probably agree has been proven without any doubt left, and I will talk to you a little bit about that proving without a doubt or beyond a reasonable doubt standard, but the State has that obligation when there is a plea of not guilty. In essence, the defendant is saying to the State, "Prove it to a jury."

That is why we are here.

You saw a lot of witnesses come through this courtroom that to you as jurors on this case you thought well, you know there really isn't much question about that or you have heard two or three or maybe even more witnesses discuss the same thing, the exact same thing, and you thought, well, you know there is no doubt about that. We believed the first witness and the second witness and third, but it is still necessary for the State to prove the case, and that is what I have been doing here for the past week, is proving the case, and to do that, it is necessary for us to call these witnesses to present this evidence.

 Generally, a prosecutor may not comment on an accused's failure to testify. *Schertz v. State,* 380 N.W.2d 404, 410 (Iowa 1985). Comments which draw inferences of guilt from a defendant's failure to testify violate the self-incrimination clause of the fifth amendment and constitute reversible error. *State v. Kimball,* 176 N.W.2d 864, 868 (Iowa 1970). An overt statement is not required, *State v. Nelson,* 234 N.W.2d 368, 371 (Iowa 1975), both direct and indirect comments on the accused's silence are prohibited. *State v. Bishop,* 387 N.W.2d 554, 562 (Iowa 1986).

 Whether a statement constitutes an improper reference on a defendant's silence at trial depends on whether (1) the prosecutor manifestly intended to refer to the defendant's failure to testify, or (2) the jury would naturally and necessarily interpret the statement to be a reference to the defendant's silence. *Bishop,* 387 N.W.2d at 563. The court will not find that the prosecutor manifestly intended to comment on a defendant's right to remain silent when an equally plausible explanation exists for his or her statement. *Id.* A prosecutor's statements are not viewed in isolation, but in the context they were made. *Id. See Lockett v. Ohio,* 438 U.S. 586, 595, 98 S.Ct. 2954, 2959–60, 57 L.Ed.2d 973, 983 (1978) (The court looked at the context of the trial and found that the prosecutor's references to the State's unrefuted and uncontradicted evidence did not violate constitutional prohibitions.).

 The context of the prosecutor's statement suggests that it was made in connection with his observation that the State had presented numerous and repetitive witnesses and a great deal of evidence to prove its case. References to the weight and credible nature of evidence are not prohibited, and the context of the prosecutor's statement assures this court that he did not manifestly intend to refer to the defendant's silence. Likewise, the context of the statement convinces this court that it was not of such a nature that a jury would naturally and necessarily interpret the statement to be a reference to the defendant's silence.

The prosecutor's statement was not improper and Van Hoff's counsel did not err in not objecting to it and in not challenging it on appeal.

AFFIRMED.