**STATE of Iowa, Appellee,**

v.

**Tracy Lynn HARDIN, Appellant.**

No. 96–768.

Court of Appeals of Iowa.

June 26, 1997.

jured. Hardin was charged with first-degree murder and attempted murder.

On July 19, 1995, Hardin filed a request for a "Mental Evaluation and/or Treatment at State Expense." The application also requested the reports issued by Dr. Taylor be confidential unless and until such time as Hardin would list Dr. Taylor as a witness. With no objection by the state, the court granted her request for the evaluation and/or treatment at state expense but did not include an order regarding the confidentiality of any reports issued by the doctor. Hardin was evaluated by Dr. Michael Taylor on July 21, 1995. In addition to the psychiatric evaluation, Taylor prescribed medication for Hardin's depression.

In February 1996, Hardin filed a notice of defense of insanity and diminished responsibility. The State then filed an application to inspect and copy the reports of Dr. Taylor's mental examination of Hardin. Hardin resisted the State's application claiming the physician-patient privilege. The court granted the State's application noting that it was not "convinced that the treatment, if any, rendered by Dr. Taylor, would be such as to constitute treatment for purposes of establishing a patient-client relationship...." Hardin's application for interlocutory appeal of this ruling was denied by the supreme court.

During Hardin's jury trial, after the defense renewed its motion to exclude Dr. Taylor from testifying, the court reversed itself and ruled that the State could not call Dr. Taylor as an expert witness due to the physician-patient privilege. The State then requested a continuance to secure a substitute expert to conduct a psychiatric evaluation of Hardin. The court granted the State's request.

Hardin's requests to have the evaluation videotaped and to have counsel present during the evaluation were denied, however an audio taping was allowed.

Alfredo Parrish of Parrish, Kruidenier, Moss, Dunn & Montgomery, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett and Thomas H. Miller, Assistant Attorneys General, Kevin Parker, County Attorney, and Douglas D. Hammerand and Patricia Notch, Assistant County Attorneys, for appellee.

Heard by HABHAB, C.J., and CADY and VOGEL, JJ.

VOGEL, Judge.

Tracy Hardin appeals the judgment and sentence entered upon her convictions of first-degree murder and willful injury in violation of Iowa Code sections 707.1, 707.2(1), and 708.4 (1995).

**Background facts.** In the early morning hours of July 16, 1995, Tracy Hardin broke into her ex-husband's house. She shot her ex-husband, Robert, and his girlfriend, Amy Wilson. Amy was killed; Robert was in-

■ **I. Physician-patient privilege.** Hardin argues the district court erred in initially ruling that no physician-patient privilege existed between her and Dr. Taylor, an examining psychiatrist. We review the dis-

trict court's interpretation of Iowa Code section for errors of law. *State v. Rieflin,* 558 N.W.2d 149, 152 (Iowa 1996) (citing *Chung v. Legacy Corp.,* 548 N.W.2d 147, 149 (Iowa 1996)).

■■ There is no common law physician-patient privilege; rather, this privilege is strictly statutory. *See State v. Cole,* 295 N.W.2d 29, 32 (Iowa 1980). Iowa Code section 622.10 states that no physician or physician's assistant may testify with respect to " ... any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office...." *Id.* However, "[t]he statutory physician-patient privilege does not attach when a defendant gives notice of the defense of insanity or diminished responsibility." *Rieflin,* 558 N.W.2d at 154 (citing *State v. Rhomberg,* 516 N.W.2d 803, 808 (Iowa 1994); *State v. Craney,* 347 N.W.2d 668, 672 (Iowa 1984); *Cole,* 295 N.W.2d at 35). The *Cole* court's explanation of the waiver of the privilege in such a circumstance is instructive:

> We believe the defense of diminished capacity waived the privilege here, even if it had existed, for the simple reason *it would be incongruous to allow a party to put a matter in issue and then deny access of an opposing party to relevant information concerning it.* Our modern concept of criminal trials favors full disclosure of facts, within constitutional limitations, on both sides of the table.... Even the most restrictive authorities would say [defendant] would have waived the privilege by introducing evidence on it....

*Cole,* 295 N.W.2d at 35 (citations omitted) (emphasis added).

■ Additionally, Iowa Code section 622.10 carves out a "patient-litigant" exception. When the condition of a person is a factor or element of the claim, or a defense of the person claiming the privilege, the patient-litigant exception vitiates the physician-patient privilege.

■ Hardin admitted to killing Amy and to injuring Robert. She asserts the defense of insanity and diminished responsibility; however, this defense effectively abrogates or waives the physician-patient privilege. We note "[defendant's] mental condition is not just an element or factor of [her] defense; it is the entire basis for [her] defense. The privilege is not designed as a shield behind which a patient can conceal information." *Rieflin,* 558 N.W.2d at 154; *see State v. Eldrenkamp,* 541 N.W.2d 877, 881 (Iowa 1995). Thus, we determine the district court's first ruling was correct and that it erred in later · finding a physician-patient privilege applied.

■ Hardin further contends she was denied her constitutionally guaranteed right to counsel during a psychiatric examination by the State at mid-trial. When constitutional rights are implicated, we make our own evaluation of the totality of the circumstances under which rulings on those rights were made. *State v. Cullison,* 227 N.W.2d 121, 126–27 (Iowa 1975).

Hardin contends counsel's presence was critical "to advise her during the interview regarding the questions being asked her, the need to cooperate, and the possible ramifications of her answers." While the State asserts error has not been preserved on this issue, we address it nevertheless. The *Estelle* court held a psychiatric examination may be a "critical stage" of the proceedings, but only as applied to the *penalty* phase of sentencing. *See Smith v. Estelle,* 602 F.2d 694, 708 (5th Cir.1979), *aff'd, Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). That court further articulated no constitutional right exists to have counsel present at a psychiatric evaluation, conducted either before or during trial. *Id.* While Hardin cites *Godfrey v. Kemp,* 836 F.2d 1557 (11th Cir.1988) and *In re Spencer,* 63 Cal.2d 400, 406 P.2d 33, 46 Cal.Rptr. 753 (1965), these cases essentially hold there is no constitutional right to counsel's presence if defendant places his or her mental condition into issue. *Id.* Further, Hardin cites *United States v. Garcia,* 739 F.2d 440, 442 (9th Cir.1984) to bolster her case, yet this case held the "sixth amendment entitles defendant to notice and opportunity to consult with counsel *before* psychiatric examination

regarding sanity," not *during. Garcia,* 739 F.2d at 442. (Emphasis added.)

Additionally, it would be unduly intrusive to permit counsel to be present at such an evaluation. The *Spencer* court stated counsel's presence could "largely negate the value of the examination" and would "hinder the establishment of the rapport that is so necessary in a psychiatric examination." *Id.,* 46 Cal.Rptr. at 761, 406 P.2d at 41. *See Smith v. Estelle,* 602 F.2d 694, 708 (5th Cir.1979), *aff'd, Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) ("[A]n attorney present during the psychiatric review could contribute little and might seriously disrupt the examination.").

■■■ Hardin also argues the district court's grant to the State of a four-day continuance to retain a new expert denied Hardin a fair trial under the sixth and fourteenth amendments of the U.S. Constitution, and article 1, sections 9 and 10 of the Iowa Constitution. Rulings for motions for continuance are reviewed under an abuse of discretion. *State v. Marti,* 290 N.W.2d 570, 588 (Iowa 1980). However, where constitutional rights are implicated, our review is de novo. *Hinkle v. State,* 290 N.W.2d 28, 30 (Iowa 1980).

■■■ A continuance should not be granted except upon a showing of "good and compelling cause." *Van Hoff v. State,* 447 N.W.2d 665, 669 (Iowa App.1989). Moreover, a continuance is appropriately granted for reasons not resulting from the proponent's negligence or default, when substantial justice will be more nearly obtained. *State v. Hines,* 225 N.W.2d 156, 160 (Iowa 1975). Additionally, the district court recognized the continuance as a "fair thing to do" in light of the fact the court, at the behest of Hardin, excluded Dr. Taylor as a witness, leaving the State without sufficient time to obtain an alternative evaluation of Hardin's mental state.[1] We find the State showed such compelling cause.

We affirm the district court on all the foregoing issues.

─────

1. We make this ruling notwithstanding the fact that the trial court erred in deciding to exclude

■■■ *Jury admonitions/instructions.* Hardin contests the fact she was denied a request to voir dire jurors about a newspaper article published during trial regarding the defense of insanity—although it did not directly involve her case. We find error was not preserved on this issue. Assuming error was preserved, however, we find it adequate that the court admonished the jurors stating that if any of them read the article, they should disregard it and decide the case only on the evidence and instructions issued to them. *See State v. Brown,* 397 N.W.2d 689, 699 (Iowa 1986) (holding admonition to disregard improper material is generally sufficient to prevent prejudice).

■■■ Hardin also argues the court abused its discretion in failing to instruct the jury pursuant to Iowa Criminal Jury Instructions 200.42 and 200.43 on inconsistent statements made by the State's witnesses, Dr. Spodak and Robert Hardin. We review the propriety of jury instructions for errors at law. *State v. Kellogg,* 542 N.W.2d 514, 515 (Iowa 1996); *State v. Breitbach,* 488 N.W.2d 444, 449 (Iowa 1992).

■■■ An impeachment instruction regarding prior inconsistent statements is warranted if a witness has made such statements prior to trial. *State v. Washington,* 308 N.W.2d 422, 422 (Iowa 1981). If testimony elicited on cross-examination is "at variance with the plain inference in prior statements" made outside the presence of the jury, then the impeachment instruction must be given; the statements must "materially" vary. *State v. Cuevas,* 282 N.W.2d 74, 81–82 (Iowa 1979). We find Hardin failed to establish the statements of these witnesses, Dr. Spodak and Robert Hardin, were material variances when compared to their respective prior statements. Moreover, Jury Instruction Six advised the jury, among other things, that in assessing witness credibility, it should consider "whether a witness has made inconsistent statements." We find Hardin's claim in this regard without merit.

■■■ Hardin also argues the State's display during closing argument of a poster

─────

Dr. Taylor as a witness; the court's first ruling to allow him to testify was correct.

entitled "Flight" was improper and that the district court should have granted a mistrial. We find this issue was not properly preserved. Hardin did not lodge an objection to this poster until after the closing argument, nor did she request a mistrial at that time. This claim accordingly has been waived. *State v. Jackson,* 397 N.W.2d 512, 513 (Iowa 1986) (stating a mistrial motion must be made as soon as grounds therefore become apparent). Hardin did raise a mistrial claim in her motion for a new trial. However, error cannot be preserved this late. *See State v. Steltzer,* 288 N.W.2d 557, 559 (Iowa 1980). Hardin similarly failed to timely preserve any constitutional issues regarding the "flight" poster. *See State v. Hansen,* 286 N.W.2d 163, 165–66 (Iowa 1979).

**III. State's closing argument.** Hardin contests the reference by the State during closing argument to the jury's duty to "enforce the law" and argues the district court abused its discretion in not granting a mistrial therefor. We review motions for mistrial for an abuse of discretion. *State v. Washington,* 308 N.W.2d 422, 424 (Iowa 1981). Prosecutorial misconduct in closing arguments may result in reversal of a convic-

tion. *United States v. Norton,* 639 F.2d 427 (8th Cir.1981). The prosecutor stated to the jury in his closing "that in this country and right here in Warren County in the final analysis the law cannot be enforced unless a jury enforces it." We find any impropriety riddled in this statement is tempered by the fact the district court advised the jury that enforcement of the law was not its duty, and that its duty was only to follow the instructions, determine the facts, and arrive at a fair and just verdict. We find this admonition was appropriate and ameliorated any conceivable prejudice. *See State v. Brown,* 397 N.W.2d 689, 700 (Iowa 1986).

Having carefully considered each argument before us on appeal, we accordingly affirm the district court and uphold Hardin's convictions.

**AFFIRMED.**