STATE of Iowa, Appellee,

v.

William THORNTON, Appellant.

No. 91–386.

Supreme Court of Iowa.

April 21, 1993.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., James J. Koll, County Atty., and James E. Fitzgerald, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

Defendant William Thornton appeals his conviction of second-degree murder. Thornton asserts that the evidence at trial was insufficient to convict him. Thornton also asserts that the district court erred in allowing the prosecutor to ask Thornton to re-enact the shooting, and in overruling Thornton's objections to the prosecutor's rebuttal closing argument.

The court of appeals reversed the conviction, concluding the re-enactment demonstration request was improper. We vacate the court of appeals decision and affirm the district court.

I. *Background facts and proceedings.* After work on October 27, 1990, William Thornton went to a "bootlegging house" in Fort Dodge owned by John Andrews. He asked both Andrews and Samuel Colvin, the bartender, about money they allegedly owed him. Colvin denied owing Thornton any money.

Thornton left shortly thereafter and did some errands. He showered, changed clothes, and placed a loaded pistol in the front of his pants.[1] He then returned to Andrews' residence where a number of people were gathered for the evening. The house was apparently crowded and noisy.

Thornton approached Colvin, who was standing behind a makeshift bar. Thornton ordered a drink and reminded Colvin about the alleged $40 debt. Colvin denied owing any money and made an obscene request to Thornton.

According to Thornton, Colvin then grabbed a knife and lunged toward him. Thornton pulled out his gun and shot Colvin in the chest.

Thornton left the bar without speaking to anyone, calling the police, or calling an ambulance. He eventually rode around town with two friends, ducking down whenever another car approached. At one point, the three returned to the bar and discovered Colvin had died as a result of the gunshot wound. Thornton later spent the night with a young woman he had dated.

Police arrested Thornton the next day without incident.

Thornton was accused of murder in the first degree pursuant to Iowa Code sections 707.1, 707.2(1) and 707.2(2) (1989). Prior to trial, he timely filed a notice of self-defense. Iowa R.Crim.P. 10(11)(c).

Thornton's case proceeded to a jury trial.

At trial, the district court denied Thornton's motion for judgment of acquittal at the end of the State's evidence.

Thornton testified on his own behalf, stating that he shot Colvin after Colvin pulled the knife and lunged at him. He stated that he could not retreat due to the crowded conditions near the bar. On cross-examination, the prosecutor repeatedly asked Thornton to demonstrate specifics of the confrontation leading up to the shooting and the shooting itself. Thornton refused to do so, claiming he could not provide an adequate demonstration because the incident happened so fast that he could not recall the details. The trial court denied Thornton's lack of foundation objections to this cross-examination. The trial court then denied Thornton's renewed motion for judgment of acquittal at the end of all evidence.

During the State's rebuttal closing argument, the State asserted, for the first time, that Thornton first placed the gun at Colvin's chest, and Colvin then reached for a knife to protect himself. The trial court overruled Thornton's objection to the argument.

The jury found Thornton guilty of second-degree murder. Iowa Code §§ 707.1, 707.3. The trial court denied Thornton's motion for new trial and later sentenced Thornton.

Thornton appealed. We transferred the case to the court of appeals. The court of appeals majority reversed Thornton's conviction due to the district court's denial of his objections to the prosecutor's repeated requests to demonstrate the confrontation which resulted in Colvin's death.

We granted the State's petition for further review.

■ II. *Substantial evidence to support the verdict.* Thornton contends there was insufficient evidence to convict him because the State failed to prove that he was not justified or acting in self-defense in shooting Colvin. The trial court over-

---

1. Apparently, Thornton usually had his gun with him, either in his vehicle or on his person.

He testified he carries a gun for "no reason."

ruled Colvin's motions for judgment of acquittal at the close of the State's evidence and again at the close of all evidence. The court of appeals agreed with the trial court's decision on these motions. We also affirm on this issue.

When reviewing the sufficiency of the evidence for a guilty verdict, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the evidence in the record. *State v. Blair,* 347 N.W.2d 416, 418–19 (Iowa 1984). We must consider all of the evidence and not just the evidence supporting the verdict. *Id.* at 419.

Thornton asserted the justification of self-defense. Iowa Code §§ 704.1, 704.3. The burden of proof is on the State to prove justification did not exist here. In the present case, under the trial court's instructions to the jury, the State had to prove any one of the following:

1. The Defendant started or continued the incident which resulted in death; or

2. An alternative course of action was available to the Defendant; or

3. The Defendant did not believe he was in immediate danger of death or injury and the use of force was not necessary to save himself; or

4. The Defendant did not have reasonable grounds for the belief; or

5. The force used by the Defendant was unreasonable.

*See State v. Mayes,* 286 N.W.2d 387, 392–93 (Iowa 1979).

A jury verdict is binding upon this court, and we must uphold the verdict unless the record lacks substantial evidence to support the charge. *Blair,* 347 N.W.2d at 419. Substantial evidence is evidence which "would convince a rational trier of fact that the [defendant is] guilty of the crime charged beyond a reasonable doubt." *Id.* The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive. *Id.* at 420; *State v. Schrier,* 300 N.W.2d 305, 309 (Iowa 1981). In fact, the very function of the jury is to sort out the evidence and "place credibility where it belongs." *Blair,* 347 N.W.2d at 420.

Thornton argues the evidence supports his self-defense theory that Colvin lunged at him with a knife: a knife was found next to Colvin's body; no other witnesses were allegedly in a position to see Colvin's hands at the time of the shooting; Thornton testified he was afraid for his life at the time; and quick retreat was impossible because of the crowded area and Thornton's disabled leg and arm.

We conclude the jury could rationally choose to disbelieve Thornton's testimony and his claim of self-defense. For example, Thornton asked Colvin twice for the $40, the second time with a loaded gun in the front of his pants. Although Thornton claimed to be unable to retreat from the bar when Colvin allegedly lunged, Thornton was able to easily leave the house without speaking to anyone immediately after the shooting. No other witnesses saw Colvin lunging or holding a knife; one witness even testified Colvin's hands were at his side when Thornton shot him. The State presented evidence the knife may have simply fallen from the bar when the police moved the bar to get close to Colvin. Although Colvin allegedly lunged at him with the knife, Thornton suffered no injuries and was apparently quick enough to draw his gun and shoot, despite his disabled leg and arm. After the shooting, Colvin's body remained behind the bar, which is inconsistent with lunging.

The jury also heard evidence that Thornton left the scene immediately after the shooting without stopping to call the police or an ambulance, or to explain to his friends present what had happened. Instead, Thornton went home and hid his gun in the basement. Although he allegedly told other friends he would turn himself in to the police, Thornton spent the evening riding around town with friends, ducking down whenever other cars approached. He had no contact with the police until the following day when they arrested him at a friend's house.

We conclude the jury could rationally believe these were not the actions of some-

one who honestly believed he acted in self-defense. Under the record, the jury could have believed that Colvin did not lunge at Thornton with a knife, and, as a result, that Thornton could not have believed himself in danger or believed it necessary to use force to protect himself. The jury could have believed that even if Thornton had such beliefs, they were unreasonable or that the use of deadly force was unreasonable.

We conclude the evidence was sufficient to generate a jury question on the five elements the State could prove to overcome Thornton's justification defense. Accordingly, we affirm the district court's ruling on this issue.

III. *Re-enactment demonstration request.* Thornton testified on direct examination that he asked Colvin to repay the $40, to which Colvin replied, "I don't owe you nothing. Kiss my ass." Thornton testified that he looked down and saw Colvin holding a knife. Colvin then lunged at him with the knife. Thornton said he drew his gun and, without aiming, shot Colvin because he feared for his life and was unable to retreat due to his disabilities and the crowded conditions.

On cross-examination, the prosecutor asked Thornton to step down, stand and show the jury how the whole incident happened, with the prosecutor acting as Colvin. Thornton responded that he could not demonstrate the incident because it occurred so quickly he could not remember exactly how it happened. Defense counsel accordingly objected to lack of foundation for the testimony, but the trial court overruled the objection, reasoning that if Thornton "is able to speak it, he is able to express it through actions as well."

The prosecutor went on to ask specifics, such as where Colvin was standing in relation to Thornton, in which hand Colvin held the knife, and where Colvin's hand and the knife were when Thornton fired the gun. Thornton answered mostly that he could not remember or did not know. Thornton also could not remember seeing Colvin fall to the floor or how he turned around and left the house. Thornton also said he could not remember enough to show the jury how he had lifted his shirt, drew the gun, or fired the shot.

Defense counsel objected at various points on the basis of a lack of foundation because Thornton said he could not remember exactly how the confrontation happened. The trial court overruled the objections, until it ordered Thornton to sit down and the prosecutor to continue with regular cross-examination.

Thornton now contends the trial court erred in overruling his objections because no foundation existed for the demonstration after he testified he could not remember the events, and because the prosecutor's continuous demands prejudiced him by humiliating and harassing him in front of the jury. Thornton further contends his counsel was ineffective by failing to object under Iowa Rule of Evidence 403 that the demonstration's prejudicial effect outweighed any probative value. Defense counsel did not raise a rule 403 argument until the motion for a new trial.

The court of appeals decided the trial court abused its discretion in allowing the request for a demonstration to continue after Thornton testified he could not remember how the incident occurred. As a result, the court reversed Thornton's conviction.

We believe the trial court did not abuse its discretion and affirm its judgment on this issue.

■■■■ A. *Foundation.* Admission or exclusion of demonstrative evidence rests largely within the trial court's discretion; therefore, we will not interfere unless the trial court has abused that discretion. *Mel Foster Co. Properties, Inc. v. American Oil Co.*, 427 N.W.2d 171, 176 (Iowa 1988); *Schuller v. Hy–Vee Food Stores, Inc.*, 328 N.W.2d 328, 331 (Iowa 1982); *State v. Henderson*, 268 N.W.2d 173, 179 (Iowa 1978). Demonstrative evidence is usually received if it affords a reasonable inference on a point in issue. *Henderson*, 268 N.W.2d at 179.

■■■■ The entire case here turned on Thornton's claim of self-defense. Therefore, we conclude the specific actions of

Thornton and Colvin during the confrontation and the shooting were vitally important to both Thornton's defense and the State's case. The demonstration merely attempted to pin down these important facts.

Additionally, the demonstration bore upon Thornton's credibility. The jury was entitled to decide for itself whether Thornton's claim of self-defense was believable if he could not even recall how the whole incident happened.

We conclude the trial court did not abuse its discretion in allowing the request for a re-enactment demonstration.

B. *Ineffective assistance of counsel.* Thornton contends his counsel was ineffective in failing to object to the demonstration under Iowa Rule of Evidence 403 until the motion for a new trial.

■ Usually we reserve ineffective assistance of counsel claims for post-conviction proceedings. *State v. Ueding*, 400 N.W.2d 550, 553 (Iowa 1987). However, we will resolve such a claim on direct appeal when the record adequately presents the issues. *Id.* We believe the record here adequately presents the issues.

■ To succeed on a claim for ineffective assistance of counsel, the defendant must show by a preponderance of the evidence that 1) counsel failed to perform an essential duty, and 2) such failure prejudiced the defendant. *Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989). To prove the first prong, the defendant must overcome the presumption counsel is competent and show counsel's performance is not within the range of normal competency. To prove the second prong, the defendant must show counsel's failure worked to his actual and substantial disadvantage, such that there is a reasonable probability that but for counsel's error the trial result would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984)).

■ Iowa Rule of Evidence 403 permits relevant evidence to be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice" or other reasons not relevant here. Rule 403 does not protect against all evidence that is prejudicial or detrimental to one's case, but only against evidence that is *unfairly* prejudicial. *State v. Plaster*, 424 N.W.2d 226, 231 (Iowa 1988).

■ "Relevancy" is the tendency to make a consequential fact more or less probable. *Id.* "Probative value" refers to the strength and force of that tendency. *Id.* "Unfair prejudice" is an undue tendency to suggest decisions on an improper basis, such as an emotional one. *Id.*

■ We believe that the trial court could have properly admitted the demonstration evidence despite a rule 403 objection. We believe the demonstration was relevant to Thornton's credibility after just having *told* the jury how the incident happened. We believe the demonstration is also relevant to Thornton's credibility in that the jury was entitled to see whether it was physically possible for Thornton to lift his shirt, pull his gun, and shoot Colvin after Colvin was supposedly already lunging toward Thornton with a knife.

Other jurisdictions support our view. For example, in *People v. Ortiz*, 66 Cal. App. 154, 225 P. 462 (1924), a defendant was accused of assault. Defendant testified that he initially had no weapon in his hands, but the victim rushed at him with a knife. Defendant claimed he then drew his pocket knife, opened it and cut the victim in self-defense. *Id.* at 156, 225 P. at 463. On cross-examination, the prosecutor asked defendant to demonstrate how he pulled the knife from his pocket and opened it. The court held that the demonstration was proper as to defendant's ability to hastily draw the knife from his pocket and open it during the struggle with the victim. *Id.*

In *Sipress v. State*, 562 N.E.2d 758 (Ind. App.1990), defendant was accused of burning his baby daughter with scalding liquid. Defendant testified that while holding a pan of boiling water, he tried to push the family dog away from the baby and accidentally burned himself. He then allegedly also spilled some of the liquid on the baby. *Id.* at 763. On cross-examination, the prosecutor asked defendant to demonstrate the accident. Defendant claimed he could not demonstrate. *Id.* The court of appeals

held the demonstration request was proper because, after testifying as to how the accident happened, defendant's difficulty in recreating the accident went to his credibility as a witness. *Id.*

In *State v. Gil*, 543 A.2d 1296 (R.I.1988), defendant claimed self-defense in response to a manslaughter charge. On direct examination, defendant testified regarding his actions and the victim's actions during the shooting. On cross-examination, the prosecutor had defendant hold a gun and act out how the shooting occurred with the prosecutor playing the part of the victim. Defendant claimed throughout the demonstration that he could not remember the specifics of the shooting. *Id.* at 1300. The Rhode Island supreme court held the demonstration was properly admitted. The court stated that because the defendant was claiming self-defense, the sequence of events surrounding the shooting were extremely important. *Id.* The court stated the demonstration was also relevant to defendant's credibility. *Id.*

In *People v. Atchley*, 53 Cal.2d 160, 346 P.2d 764 (1959), defendant, accused of murdering his wife, claimed on direct examination that the victim clearly saw the gun in his pants waistband and seized it. Defendant claimed the gun accidentally discharged during the ensuing struggle over the gun. On cross-examination, the prosecutor asked defendant to show how he had carried the gun and to demonstrate the struggle, with the prosecutor acting as the victim. The court held the demonstration was properly admitted because the demonstration was directly related to defendant's story that the gun discharged during the struggle. *Id.* at 173, 346 P.2d at 771.

*See generally* Timothy E. Travers, Annotation, *Propriety of Requiring Criminal Defendant to Exhibit Self, or Perform Physical Act, or Participate in Demonstration, During Trial and in Presence of Jury*, 3 A.L.R.4th 374 (1981 & Supp.1992).

We conclude the trial court properly allowed the demonstration evidence request and that Thornton's counsel was not ineffective for failing to object under Iowa Rule of Evidence 403.

**IV.** *State's rebuttal closing argument.* Thornton's theory throughout trial was that Colvin picked up the knife after Thornton had asked him about the money and Colvin had made an oral response. During closing argument, defense counsel for the first time suggested that Colvin may have picked up the knife as soon as Thornton entered the room.

In response to this argument, the prosecutor in rebuttal argument suggested for the first time that Colvin may have indeed picked up the knife from the bar, but only after Thornton pointed a gun at Colvin's chest.

Thornton objected to this argument, claiming the prosecutor had improperly introduced a new theory in rebuttal closing in violation of Iowa Rule of Criminal Procedure 18(1)(b). The trial court overruled the objection.

The State claims this error was not preserved for appeal because Thornton did not move for a mistrial on this basis before the case went to the jury.

We assume, without deciding, for the purposes of this discussion that Thornton properly preserved the issue.

The trial court has broad discretion in ruling on claims of prosecutorial misconduct; therefore, our review is for abuse of discretion. *State v. Erving*, 346 N.W.2d 833, 836 (Iowa 1984); *State v. Lass*, 228 N.W.2d 758, 770 (Iowa 1975).

In closing arguments, counsel is allowed some latitude. *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975). Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented. *Id.* However, counsel has no right to create evidence or to misstate the facts. *Id.; accord State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982); *State v. Van Hoff*, 371 N.W.2d 180, 186 (Iowa App.1985), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 578 (1985).

A prosecutor is not required to sit mute and let the defendant's interpretation of evidence go unchallenged. *State v. Hall*, 235 N.W.2d 702, 728 (Iowa 1975), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54

L.Ed.2d 79 (1977). A prosecutor is entitled to make a fair response, or "invited and fair comment," on a new argument defendant presents during closing. *Brewer v. State*, 444 N.W.2d 77, 84 (Iowa 1989). The prosecutor is allowed this additional leeway because it was the defendant's own new argument that prompted the prosecutor's response. *Wycoff v. State*, 382 N.W.2d 462, 468 (Iowa 1986).

We conclude the prosecutor's argument was properly admitted in response to Thornton's own new theory he presented for the first time during his closing argument. We believe the prosecutor was not required to sit mute and let this new theory go unchallenged, especially when the point at which Colvin grabbed a knife, if ever, was central to the case. We therefore affirm the trial court's ruling on this issue.

V. *Disposition.* Finding no merit in any of Thornton's contentions, we vacate the court of appeals decision and affirm the trial court's judgment in all respects.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**