# IN THE COURT OF APPEALS OF IOWA

No. 14-1719
Filed November 25, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JAMES DURRELL CALDWELL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

A defendant convicted of third-degree burglary challenges the district court's ruling on his motion for new trial. **AFFIRMED**.

Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Martha E. Trout, Assistant Attorneys General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A jury decided James Caldwell committed burglary in the third degree by entering his neighbor's home while she was gone camping—without permission and with the intent to commit theft. On appeal, Caldwell contends the jury's verdict was contrary to the weight of the credible evidence. Because the district court did not abuse its discretion in denying Caldwell's request for a new trial, we affirm.

## I.       Background Facts and Proceedings

"What are you doing in my house?" Glenda Husome asked Caldwell, her next-door neighbor, when she unexpectedly encountered him standing in her living room when she returned home from a mid-June camping trip. Caldwell, who was wearing brown gloves, told Husome he saw her front door open and thought he would ask if she wanted him to mow her lawn. Husome had hired Caldwell to mow her lawn on one occasion about six weeks earlier. Caldwell said when he knocked on Husome's door he saw "two guys that ran out the back door" and into a "big yellow van," so he entered the house to see if Husome was okay.

Husome was skeptical that Caldwell, while standing at the front door, could have seen anyone running out her back door or entering a van behind her house. Husome was nervous to be alone with Caldwell and started backing out of her house. Caldwell told her he saw "two white boys here on Saturday night that stole your grill too." Husome explained her son and his friend had picked up her grill.

After Caldwell returned next door to mow his own lawn, Husome called her son at work and then the police. As she was talking on the phone, she went back inside her house and noticed her large-screen television was unplugged and pulled away from the wall in the living room. Her bedroom was in disarray. Drawers were dumped onto the bed; jewelry and clothes were strewn all over. She also found a white trash bag by her back door containing more of her jewelry and a coin jar.

When the police arrived a few minutes later, Husome told Officer Timothy Frisch that her neighbor had seen burglary suspects leaving her house.[1] Officer Frisch went next door to gather more information, but Caldwell was not home. The officer noticed a little swath of grass cut in his yard. Police learned Caldwell was driving a silver sports utility vehicle (SUV) and eventually spotted him parking about a block away behind a school bus. Officer Daniel Frederickson believed Caldwell had seen squad cars at the burglary scene, and purposefully tried to avoid contact. When Officer Frederickson approached him, Caldwell said he was returning from a trip to get gasoline for his lawn mower.

Because Caldwell had an outstanding warrant for his arrest, Officer Frederickson placed him in handcuffs. Caldwell denied burglarizing his neighbor's house. When police returned to photograph the parked SUV about one week later, they did not find a gas can inside.

On June 23, 2014, the State charged Caldwell with burglary in the second degree, a class "C" felony, in violation of Iowa Code sections 713.1 and 713.5

---

[1] Police investigated a yellow rental van parked in the neighborhood, but concluded its occupant was not involved in the burglary.

(2013). The State also alleged Caldwell was an habitual offender under section 902.8. A jury trial started on September 2, 2014, and on September 5, 2014, the jury found Caldwell guilty of the lesser included offense of burglary in the third degree, in violation of section 713.6A, a class "D" felony.[2]

Caldwell's attorney filed a motion for new trial on October 1, 2014, alleging, "The evidence presented at the jury trial was insufficient to sustain a conviction." The district court recognized at the sentencing hearing that the defense motion articulated an incorrect standard for seeking a new trial. *See* Iowa R. Crim. P. 2.24(2)(b)(6) (permitting court to grant a new trial when the verdict is "contrary to law or evidence"). The court considered the new-trial motion under the proper standard as described in *State v. Ellis,* 578 N.W.2d 655 (Iowa 1998):

> Utilizing the *Ellis* standard, the Court is applying whether or not the verdict was contrary to the weight of the evidence, and in considering the factors that obviously as the trial court I am fully aware of, and the Court finds that the jury's verdict was not contrary to the weight of the evidence and, in fact, that there was ample evidence to find the defendant guilty of the offense to which they returned a verdict.

The court highlighted the credible evidence that it believed weighed in favor of the jury's verdict:

> I think, frankly, the defendant's subsequent behavior after the burglary is also particularly telling of his involvement in the burglary and contrary to the evidence that—or the suggestions that mitigate his involvement in a burglary and suggest that he was merely there as a good samaritan neighbor to cut grass. And the record certainly will reflect his parking the car some distance away from his own home, the home of the victim in this case as well; that he

---

[2] Second-degree burglary has the additional element of one or more persons being present in the occupied structure during the incident.

was hiding and lurking behind a school bus; and his behavior when approached by law enforcement are all factors that the jury certainly could consider, the Court considers as well, of his guilty and criminal behavior.

The court sentenced Caldwell to an indeterminate sentence of fifteen years[3] with a mandatory minimum term of three years. He now appeals.

## II. Standard of Review

We review for an abuse of discretion when a district court decides a new trial motion premised on rule 2.24(2)(b)(6). *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). To establish an abuse of discretion, the complaining party must show "the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). Although district courts enjoy wide discretion in deciding new-trial motions, our supreme court has warned "such discretion must be exercised 'carefully and sparingly' to insure the court does not 'lessen the role of the jury as the principal trier of the facts.'" *Ellis*, 578 N.W.2d at 659. Only when the evidence "preponderates heavily against the verdict," should the district court invoke its power to grant a new trial. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). In other words, the grant of a new trial should be reserved for the "exceptional case" where "a miscarriage of justice may have resulted." *Reeves,* 670 N.W.2d at 202. On appeal, our review "is limited to a review of the exercise of discretion by the trial court, not the underlying question of whether the verdict is against the weight of the evidence." *Id*. at 203.

---

[3] Caldwell received a concurrent sentence for driving while barred; he does not challenge that judgment and sentence on appeal.

### III.     Weight-of-the-Evidence Analysis

In finding Caldwell guilty of third-degree burglary, the jury found the State proved the following elements:

> 1. On or about the 16th day of June, 2014, the defendant broke into [a home in] Waterloo, Iowa.
> 2. The residence was an occupied structure . . . .
> 3. The defendant did not have permission or authority to break into the residence.
> 4. The defendant did so with the specific intent to commit a theft.

Caldwell contends the district court abused its discretion in denying his motion for new trial on grounds that the verdict was contrary to the weight of the evidence.  He asserts: "The greater weight of the evidence presented supported a finding that Caldwell did not burglarize Husome's home.  He merely entered Husome's home out of neighborly concern for her welfare."

"Contrary to the evidence" in rule 2.24(2)(b)(6) means contrary to the weight of the evidence.  *Ellis*, 578 N.W.2d at 659.  Under this standard, the district court weighs the evidence and considers credibility as it determines whether "a greater amount of credible evidence supports one side of an issue . . . than the other." *Reeves,* 670 N.W.2d at 202.

On appeal, Caldwell tallies facts supporting his version of events:

> It is understandable that Husome was alarmed to find Caldwell in her home; however, he was merely checking on her after seeing two men flee out her back door. . . .  Caldwell had previously mowed Husome's lawn and had left a note in her mailbox to inquire about mowing the lawn again. . . .  Caldwell was not aggressive or threatening towards Husome when she found him in her home.  He was wearing gloves, which might have seemed suspicious, but he was about to mow his own lawn. . . .  He was dressed for outdoor

work. . . . The officers failed to do any fingerprinting at the scene, having decided that Caldwell was the suspect. When police found Caldwell a short distance away, he said he left to obtain more gas for his mower. . . . Despite a claim that Caldwell hid his SUV behind a bus, no bus appears in the photo taken of his vehicle that day. While officers did not find a gas can in his vehicle, they did not think to check until an entire week had passed and could not say if anyone else had access to his vehicle. . . . Caldwell also had reasons to avoid law enforcement—a warrant for his arrest and his driving privileges were barred. . . . Caldwell steadfastly maintained his innocence despite assurances that he was only facing a misdemeanor, which was untrue.

The State counters with a different slant on the evidence:

[T]he jury found that Husome caught the defendant burglarizing her home. He was in the midst of gathering his ill-gotten gains when she interrupted him. He fabricated a story that he was checking on her and her house after two men left to explain his presence in the house. He also claimed to have been wearing gloves because he was going to mow his lawn. Although he did start his mower, he left the scene about the time police arrived to question him about the incident. He claimed he left to get gas for mower but there were no gas cans in his vehicle.

The existence of two plausible versions of the events for the jury to choose from does not mean the evidence preponderates heavily against the verdict. A jury is uniquely qualified to "sort out the evidence" and "place credibility where it belongs." *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

The case against Caldwell was not a situation where the testimony of a witness or several witnesses which would otherwise support the conviction was "so lacking in credibility that the testimony cannot support a guilty verdict." *See State v. Adney*, 639 N.W.2d 246, 253 (Iowa Ct. App. 2001). Neither was it a case where the evidence supporting the guilty verdict was "so scanty, or the evidence opposed to a guilty verdict so compelling, that the verdict can be seen

as contrary to the evidence." *See id.* Husome was a credible witness. Someone had entered her home with the intent to steal her possessions. She discovered Caldwell in her home without permission, wearing gloves. The question was whether Caldwell was the burglar or a witness to the burglary. The jury could have reasonably viewed his conduct in avoiding the police after Husome returned home as more consistent with having committed the burglary than having happened onto the burglary scene. Caldwell's prosecution was not the extraordinary case where the evidence preponderated heavily against the jury's verdict. The district court did not abuse its discretion in denying the motion for new trial.

**AFFIRMED.**