# IN THE COURT OF APPEALS OF IOWA

No. 15-0428
Filed May 25, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**EARL ANTONIO DUNN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.

Earl Dunn appeals from his conviction for attempt to commit murder. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Mary Conroy and Joseph A. Fraioli (until withdrawal), Assistant Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Earl Dunn appeals from his conviction for attempt to commit murder. He asserts trial counsel was ineffective for failing to object to statements made by the prosecutor during closing arguments; specifically, he argues a violation of *State v. Graves*, 668 N.W.2d 860 (Iowa 2003), occurred, and therefore counsel should have moved for a mistrial on prosecutorial-misconduct grounds. We conclude that, given the context of the prosecutor's closing arguments, it was a proper summation of the facts and did not constitute prosecutorial misconduct. Consequently, we affirm.

**I. Factual and Procedural Background**

At trial, the jury could have found the following facts. Dunn and the victim, Kelon Tucker, had known each other since 2008, and they remained on good terms until approximately June 2014, when Dunn began dating Tucker's ex-girlfriend, Qiana Saunders.

On the evening of July 28, 2014, after drinking, Tucker, his new girlfriend, and another female friend went to a gas station and observed Dunn at a gas pump with Saunders in Dunn's vehicle, a dark purple SUV. Dunn testified that as Tucker drove by, someone in Tucker's car made gestures towards Dunn by motioning with their fingers as if they were shooting at him.

After leaving the gas station, Dunn called Tucker on the phone, and according to Dunn, Tucker was upset and screaming into the phone, and eventually asked Dunn where he was. Dunn stated they should meet at his brother's residence, but Tucker insisted on meeting at Saunders's house.

When the call ended, Dunn and Saunders returned to Saunders's home on 12th Street. Saunders then went inside while Dunn stayed outside with his dogs. Tucker pulled up and parked just ahead of Dunn's vehicle, leaving a gap between the cars. Tucker immediately exited, and the two met in the street between their respective vehicles. Saunders and her daughter were on the porch in front of the house. The passengers in Tucker's vehicle remained inside.

Dunn and Tucker began arguing. Tucker, although he admitted he was intoxicated, stated it was a relatively calm conversation, while those inside Tucker's vehicle said it was a loud and heated argument. According to Dunn, he and Tucker immediately starting arguing, screaming at each other "face-to-face, foreheads touching." Dunn testified that Tucker initiated the argument when he exited his vehicle by stating "next time you call my phone, you better have a suit ready and buy your momma a black dress for the funeral."

The argument continued for fifteen to twenty minutes. According to Dunn, Tucker turned and went back towards his vehicle while still arguing with Dunn; when he returned, Tucker brandished a small black firearm. Tucker then put the gun to Dunn's chest, and as Dunn grabbed for the gun, it discharged striking Dunn in the upper arm. Dunn was immediately able to grab the gun from Tucker and fired once, then four more times as Tucker re-approached him. Dunn testified that it was relatively easy to get the gun from Tucker because he was "tipsy" and smelled of alcohol.

In Tucker's testimony, he stated at some point he turned back to go into his truck, and Dunn pulled out a gun and shot him. Dunn continued to fire at Tucker as he retreated to his vehicle, hitting him first in his side, then three times

in the back. Tucker got into the vehicle and began driving. One of Tucker's passengers took over driving because Tucker was getting light-headed, as he was losing blood. They drove Tucker to the hospital where he received treatment for his gunshot wounds.

Wayne Poffenbarger, a neighbor of Saunders, testified that he heard an argument "[a]t the residence on-straight across from [him] on the other corner." After looking out of his window, he saw two men arguing and then one man backing up as he shot at the second man. He claimed he was watching as the first shot was fired and only one man did all the shooting. That man was shooting to the west, towards the light-colored SUV. He called the police shortly after 1:00 a.m. Though Poffenbarger could not identify the shooter, he testified the man was black, stocky, possibly with dreadlocks, and was approximately five foot, ten inches tall.

Through the testimony of two Burlington police officers, the State also introduced an audio-video recording in which the shots fired could be heard. This recording was made by the personal microphones of the officers who were a few blocks away and who quickly arrived on the scene.

Dunn testified that after the shooting he threw the empty gun forward, which Tucker picked up, and then Tucker got into his vehicle and drove away. Dunn walked to a friend's residence that was close by. Dunn thought he had broken his foot during the altercation, though he stated he could not remember how he did so. Dunn was then driven to the home of a second person, Nikita Phillips. There, Dunn attempted to treat the gunshot wound in his arm himself before falling asleep for a couple of hours. When he awoke, he called a third

friend to pick him up. He stayed with that friend until the following day, when he went to the hospital to seek treatment for his wound.

On August 8, 2014, Dunn was charged with attempt to commit murder, in violation of Iowa Code section 707.11 (2013), and a jury trial commenced on January 13, 2015. Following the close of evidence, on January 21, 2015, the jury returned a guilty verdict. The district court then sentenced him to a term of imprisonment not to exceed twenty-five years. Dunn appeals.

## II. Standard of Review

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* We review ineffective-assistance-of-counsel claims de novo. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure. *Id.*

## III. Prosecutorial Misconduct

Dunn argues the prosecutor's statements during closing arguments, wherein he called Dunn's testimony "untruthful" and "false," amounted to prosecutorial misconduct, in violation of *Graves*, 668 N.W.2d at 860. Consequently, he asserts, trial counsel was ineffective for failing to object and to move for a mistrial.

**A. Legal Standard**

To establish a due process violation based on prosecutorial misconduct, the defendant must first provide proof of misconduct, though a showing of bad faith is unnecessary. *State v. Piper*, 663 N.W.2d 894, 913 (Iowa 2003). The second requirement is a showing that the misconduct resulted in prejudice such that the defendant was denied a fair trial, and therefore, a due process violation occurred. *Id.*

With regard to assessing a prosecutor's comments, our supreme court has held that stating the defendant lacks credibility and is a "liar" constitutes misconduct; however, a prosecutor is free to argue that, based on reasonable inferences from the evidence, the defendant has not been truthful in his testimony. *Graves*, 668 N.W.2d at 876. Additionally, we must also inquire whether:

> [T]he prosecutor's statements that the defendant lied [were] conveyed to the jury as the prosecutor's personal opinion of the defendant's credibility, or was such argument related to specific evidence that tended to show the defendant had been untruthful? and . . . [whether] the argument [was] made in a professional manner, or did it unfairly disparage the defendant and tend to cause the jury to decide the case based on emotion rather than upon a dispassionate review of the evidence?

*Id.* at 874–75; *see also State v. Carey*, 709 N.W.2d 547, 558 (Iowa 2006) (noting, "the prosecutor often suggested that the defendant had been less than truthful regarding his version of events. However, only once did the prosecutor use the disparaging term 'lies' to describe the defendant's testimony" and, therefore, holding no due process violation occurred).

If the prosecutor's statements rise to the level of misconduct, we must then determine whether the defendant was denied a fair trial. In doing so, we consider the following factors: "(1) the severity and pervasiveness of the misconduct, (2) the significance of the misconduct to the central issues in the case, (3) the strength of the State's evidence, (4) the use of cautionary instructions or other curative measures, and (5) the extent to which the defense invited the misconduct." *Graves*, 668 N.W.2d at 869 (citations omitted). We further note that "the prosecutor's primary interest should be to see that justice is done, not to obtain a conviction." *Id.* at 870.

**B. Alleged Instances of Misconduct**

Dunn complains of the following statements made by the prosecutor during closing arguments. After playing the recording in which the jury could hear the cadence of the shots fired, the prosecutor stated:

> There is no pause [between the shots] that would allow [Dunn] the time that would be necessary in order to disarm somebody, to turn the gun around on them, and then to fire two shots, all mind you while after he had just allegedly been shot in the shoulder.
> The evidence clearly shows you that there would not be time for [Dunn]'s story to be true. That just would not be true.

Also in connection with the recording, the prosecutor argued, "State's Exhibit 6 tells you that [Dunn]'s story is not true. The timing of State's Exhibit 6 tells you that it is not true."

After summarizing the testimony of Poffenbarger, the prosecutor stated:

> But he told you what he saw. And it is very important that he saw that very first shot. The reason it's important is because it tells you that the story of [Dunn] is not correct. It tells you that it is not true. It tells you that it's not accurate.
> The testimony of Wayne Poffenbarger by the way is 100 percent consistent with what the victim told you happened. It's

absolutely consistent. It is totally inconsistent with what [Dunn] is trying to make you believe happened.

. . . .

. . . [Poffenbarger's testimony] shows you that [Dunn]'s statement is not true.

In his summation, the prosecutor further argued, "All of the credible evidence in this case shows you that the testimony of [Dunn] is false with respect to acting in self-defense." In the State's rebuttal, the prosecutor again noted the testimony of Poffenbarger established that Dunn's "story cannot be true." After summarizing further evidence, he also stated, "The known evidence in this case tells us that [Dunn]'s story is not accurate."

Additionally, Dunn argues the State misconstrued the testimony of Poffenbarger and introduced facts not in evidence during the following statement:

We know one man and only one man had that gun the entire time. And we know from all of the facts and circumstances that we learned that the person who did most all of the shooting, even if you take [Dunn]'s version, was [Dunn].

Wayne Poffenbarger, *he told you it was actually [Dunn] that did all the shooting.*

(Emphasis added.)

Dunn further claims the prosecutor improperly inserted his personal opinion by stating, "I think the circumstances of this event show you that [Dunn] expected that those multiple gunshots to Kelon Tucker would result in his death." With respect to the recording and defense counsel's argument there was a pause between the shots, the prosecutor stated, "I would very strongly disagree." Dunn also points to the prosecutor's comment with respect to the testimony of Phillips,

in which the prosecutor stated, "I would suggest to you that the testimony of Nikita Phillips, that you should take that with a grain of salt in this case."[1]

**C. Analysis**

Given the standards set forth above, we conclude the prosecutor's statements during closing argument do not rise to the level of misconduct. As an initial matter, the prosecutor did not use the word "liar," and therefore did not violate the bright-line rule set forth in *Graves*. *See id.* Rather, the prosecutor was employing reasonable inferences—deduced from the evidence—to show Dunn's version of events did not square with the evidence presented, and that Dunn was not in fact acting in self-defense as he claimed when he shot Tucker.

The statements made here are similar to those in *Carey*. Our supreme court in *Carey* noted the prosecutor made the following comments during closing argument:

> "[T]he truth always remains constant. The lies that the defendant told you are the constantly changing ones that change with the ebb and flow as to how things are going at the time."
> At another point the prosecutor argued "[the victim] is telling the truth. You know he is. Because he doesn't have any motive in here to try to get this defendant convicted of any crime. . . . [H]e's here because he's subpoenaed."
> The prosecutor also said, "You know [the victim] is not lying," and stated that the defendant's version was "baloney," apparently basing this assessment on the fact that other witnesses bolstered the victim's testimony and virtually all other evidence contradicted the defendant's testimony. The prosecutor noted the lack of

---

[1] Dunn also complains of the following statement: "[Dunn] is not being truthful; he's not being accurate." Defense counsel then objected, arguing it was not "proper for the prosecution to comment in saying that [Dunn] is not being truthful." The district court sustained the objection and instructed the jury to disregard. Defense counsel also objected when, during the State's rebuttal, the prosecutor argued "Poffenbarger's testimony tells you that [Dunn]'s story cannot be true," though the court overruled this objection. Nonetheless, Dunn's claim of error relies on the ineffective-assistance-of-counsel framework, and because counsel objected to these statements by the prosecutor, we will not include them in our consideration of the alleged error.

supporting evidence for the defendant's version of the event and then asked, "[W]hy on earth would you believe anything the defendant says?"

709 N.W.2d at 556. The *Carey* court also stated: "It is not so much the fact that the prosecutor suggests the defendant is untruthful that creates the misconduct. Instead, it is the use of the word 'liar' itself." *Id.* at 558.

As previously noted, the prosecutor summarized the evidence presented in the case, then stated such evidence—including the testimony of Poffenbarger and the audio recording—was contradictory to Dunn's version of events and his claim of self-defense. The arguments following the summation of the evidence directed the jury to conclude that Dunn's account of the altercation was not in accord with the evidence presented, as opposed to being a direct attack on Dunn's credibility. Therefore, these statements are closely aligned with those made in *Carey*, wherein our supreme court concluded the statements did not amount to prosecutorial misconduct. *See id.*; *see also Graves*, 668 N.W.2d at 876. That is the same conclusion we reach here.

Furthermore, we do not agree with Dunn's argument the prosecutor's statement that Poffenbarger testified Dunn was the shooter was misconduct. Though Poffenbarger stated he could not identify the shooter, he did describe the scene, beginning with the first shot fired. He noted the position of the men, their movements, and the direction the person shooting was facing. Given the context of the summary in which the prosecutor argued Dunn was the shooter, no prejudicial misstatement of the evidence occurred. In evidence was also Dunn's admission that he fired several shots, which the prosecutor noted before stating

Poffenbarger said Dunn shot Tucker. Therefore, we conclude this statement, viewed in context, does not constitute misconduct.

With respect to the statements in which the prosecutor used "I," we agree with Dunn that it brought to the jury's attention the prosecutor's individual point of view. However, these were not personal assessments of Dunn's credibility on the part of the prosecutor. Rather, these statements related to the summation of the evidence and, therefore, constituted a permissible form of argument as opposed to a personal opinion. *See Carey*, 709 N.W.2d at 557. These statements were not made with the purpose of exciting the jury's sensibilities, nor were they inflammatory such that the jury would decide the case based on emotion rather than an impartial review of the evidence. *See Graves*, 668 N.W.2d at 875. Consequently, we conclude these statements also do not amount to prosecutorial misconduct. *See id.* at 876.

Moreover, even if we were to find that the prosecutor's statements constitute misconduct, Dunn was not prejudiced such that he was denied a fair trial. As the prosecutor underscored during his closing argument but before discussing to the merits of the case:

> And you may have heard the court say at one point that arguments are not evidence, and I want to make sure that I stress that to you. The things that I will be saying, the facts that I will be repeating, the facts that [defense counsel] will be repeating are things that we're trying to summarize from the evidence that we believe you heard from the witnesses on the stand and any other evidence in the case. It is very important that you rely on your own recollections of what the evidence was. If I say something that does not jibe with your memory, if [defense counsel] says something that you don't think was accurate according to what the witnesses testified to, it's very important that you rely on what your own memories are. Please do not rely on statements that we make if it's inconsistent

with what you remember. And that's very important that you do that.

Similar to the situation in *Carey*, the prosecutor's statements were made solely during closing arguments. Such statements are not evidence but, rather, a summation and argument to the jury regarding the reasonable inferences that could be made from such evidence. *See Carey*, 709 N.W.2d at 557 (noting "prosecutors are entitled to some latitude in crafting a closing argument"). We also note, "In closing arguments, counsel is allowed some latitude. Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented." *State v. Thornton*, 498 N.W.2d 670, 676 (Iowa 1993).

Thus, the limited nature of the alleged improper statements demonstrates a lack of severity or pervasiveness because they were made only during closing arguments. *See Graves*, 668 N.W.2d at 869. Additionally, while the issue of credibility was central to the case, the State's evidence was sufficient to preclude any finding of prejudice. This evidence was comprised of the testimony of several witnesses—including the victim—that supported the prosecution's version of events, in addition to the audio recording of the shooting and testimony of the nearby police officers. This lead to a strong case presented by the State, which weighs against the finding of prejudice. *See id.*

We therefore conclude Dunn did not establish prosecutorial misconduct occurred and that, even if the prosecutor's statements rose to the level of misconduct, Dunn did not demonstrate he was prejudiced or that he was denied a fair trial. Consequently, no *Graves* violation occurred.

**IV. Conclusion**

Given Dunn did not establish a due process violation, we conclude trial counsel was not ineffective for failing to move for a mistrial based on the statements in the prosecutor's closing arguments.  *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (stating it is the defendant's burden to show both prongs by a preponderance of the evidence).  Therefore, we affirm Dunn's conviction.

**AFFIRMED.**