# IN THE COURT OF APPEALS OF IOWA

No. 22-0655
Filed February 8, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**RHONDA MARIE WEMARK,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Clay County, Andrew J. Smith, District Associate Judge.

Rhonda Wemark appeals her conviction for third-degree theft—by possession of stolen property. **AFFIRMED.**

Pamela Wingert of Wingert Law Office, Spirit Lake, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Rhonda Marie Wemark appeals her conviction for third-degree theft—by exercising control over stolen property. She asserts the evidence is insufficient to sustain her conviction and the district court erred in admitting hearsay and testimony in violation of a limine order. We find substantial evidence supports the jury's verdict and the evidentiary issues were not preserved or were waived. We affirm.

**I. Background Facts & Proceedings.**

On August 27, 2020, Jeffrey Madsen was contacted by Ace Mini Storage advising him his storage unit was partially open. Jeffrey's daughter, Jordan Workman, went to check on the unit, found it mostly empty, and called law enforcement to report the unit had been burgled.[1] Among the missing items were over twenty marked storage tubs holding Madsen's large collection of toy John Deere tractors and trucks.

Workman contacted law enforcement with various tips about people selling toy tractors on Facebook Marketplace. Her tips were investigated, but were unsuccessful.

In early October, Workman recognized items advertised by an antique shop as belonging to Madsen, including one she had damaged when packing it to place in storage. Madsen also recognized several of the toys in the shop as belonging to him. Workman, Madsen, and a law enforcement officer met with the antique

---

[1] Law enforcement was unable to determine the exact date of the burglary. Workman had last been to the unit in mid-to-late July, putting camping gear inside and locking it up.

shop vendor, Ben Bendlin. Workman and Madsen identified several toys as coming from Madsen's collection.

Bendlin indicated the items identified by Workman and Madsen were purchased together in mid-September from a woman who had approached him at the Goodwill store. The woman sold him two marked storage tubs of toy tractors for $250, telling Bendlin it was part of her grandfather's collection.[2] He recognized her from seeing her at Goodwill "probably once a week" and was able to give the woman's age range and the make of the car she drove. Bendlin told law enforcement he would contact them if he saw the woman who sold him the toys again.

A week later, Bendlin saw the woman at Goodwill and approached her. He told her the toys had been reported stolen and she should contact the police. He called or flagged down a police officer.. The woman identified by Bendlin to law enforcement was Wemark.

Wemark spoke with the officer. She agreed she sold Bendlin the toy tractors, saying she had gotten them from her mother. Wemark provided the officer with her phone number and said she would speak with the investigating officer. The investigating officer tried to call or text Wemark several times, but she did not respond. When officers contacted Wemark's mother, she stated Wemark did not get the toy tractors from her, she did not know where Wemark got the toys, and she was not in contact with Wemark during the relevant time period.

---

[2] Bendlin testified he hoped to sell the toys for around $1000, and one of the identified tractors was worth $250 on its own.

Wemark was charged with theft in the third degree by exercising control over stolen property. After a two-day trial, a jury convicted her and found the value of property involved was more than $750 but less than $1500.

Wemark appeals.

**II. Analysis.**

*A. Sufficiency of the evidence.* We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "The jury's verdict binds this court if the verdict is supported by substantial evidence." *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive. In fact, the very function of the jury is to sort out the evidence and 'place credibility where it belongs.'" *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (citations omitted). "[W]e view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Crawford*, 972 N.W.2d at 202 (citation omitted).

Wemark asserts insufficient evidence was presented to the jury to support her conviction. To prove its case, the State had to prove three elements:

> 1. The John Deere memorabilia sold by [Wemark] was stolen.
> 2. Between the 25th day of August, 2020, and the 8th day of October, 2020, [Wemark] exercised control over the John Deere memorabilia.
> 3. At the time, [Wemark] knew, or had reasonable cause to believe, the John Deere memorabilia had been stolen.

Wemark challenges the evidence supporting the third element. She argues the inconsistencies in her story are not sufficient to establish she knew or should have known the toy tractors were stolen.[3]

The jury's instructions explained, "For the defendant to know something means she had a conscious awareness that the property she exercised control over had been stolen."[4] Iowa law has long stated, "Knowledge can be inferred from a defendant's unexplained possession of an item that was recently stolen." *State v. Stephen*, 537 N.W.2d 792, 794 (Iowa Ct. App. 1995). In addition, knowledge that an item was stolen can be inferred from the defendant's willingness to sell it for substantially less than its value. *Id.*

Wemark's explanation for her possession was the toys had been her grandfather's and she obtained them from her mother. This explanation was directly contradicted by stipulated testimony from Wemark's mother;

> 3. [Wemark] did not get the items she sold to Mr. Bendlin from me.
> 4. I do not have any toy tractors or similar items to what [Wemark] sold to Mr. Bendlin.
> 5. I do not know where [Wemark] got the items from.

Thus, the jury could find Wemark's explanation was not credible. Also, Wemark's sale of the tractors occurred less than a month after the theft was discovered, and the circumstances of her sale of the toy tractors to Bendlin—approaching a person

---

[3] Wemark's argument references testimony that others "may have been involved in taking the missing property." The State did not need to prove who stole the property, just that Wemark exercised control over the stolen property and knew or should have known it was stolen.

[4] The instructions also told the jury to "make deductions and reach conclusions according to reason and common sense," "[c]onsider the evidence using your observations, common sense and experience," and base any verdict "solely on the evidence, your reason and common sense, and these instructions."

in a Goodwill and offering to sell tubs of items—could be considered by the jury as unusual, to say the least. Moreover, Wemark was willing to sell the toy tractors for $250—substantially less than the value of the toy tractors expressed by Bendlin and found by the jury. The jury weighed the evidence and the credibility of the witnesses. *See Thornton*, 498 N.W.2d at 673. Based on the evidence, a reasonable jury could infer Wemark knew or should have known the toy tractors had not been acquired in a lawful manner. *See Crawford*, 972 N.W.2d at 202. Viewing the evidence in the light most favorable to the State, substantial evidence in the record supports the jury's verdict.

*B. Hearsay.* "We review evidentiary rulings for an abuse of discretion." *State v. Fontenot*, 958 N.W.2d 549, 555 (Iowa 2021). "[T]he standard of review for hearsay is for errors at law." *Id.*

Wemark lists several instances of the testimony she characterizes as hearsay.[5] However, she also admits error was not preserved and "no objection to this evidence was heard at trial."

"The preservation of error doctrine is grounded in the idea that a specific objection to the admission of evidence be made known, and the trial court be given an opportunity to pass upon the objection and correct any error." *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003). "The doctrine is rooted in principles of fairness where neither the state nor the defendant can raise a new claim or defense on appeal that could have been, but failed to be, raised at trial." *State v. Dessinger*,

---

[5] The testimony at issue generally related to statements made by Madsen to Workman. Madsen died in June 2021, six months after Wemark was charged but eight months before trial.

958 N.W.2d 590, 598 (Iowa 2021). As error was not preserved below, we do not consider Wemark's hearsay claims.[6] *See id.* at 599.

*C. Limine order.* Wemark's final argument is the district court erred in admitting testimony in violation of a motion in limine. To establish reversible error, Wemark "must show the violation of the limine order resulted in prejudice that deprived her of a fair trial." *State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).

During trial, Wemark made no objection to the officer's testimony or the State's closing and rebuttal arguments. Wemark did not move for a mistrial based on violation of the limine before the case was submitted to the jury. She did not ask for a jury instruction or admonition. She did not later assert the violation of the limine ruling as a ground for her motion for new trial. In other words, the district court had no opportunity to evaluate if the testimony and arguments objected to on appeal violated the motion in limine or, if a violation occurred, whether it was prejudicial to the point of denying Wemark a fair trial.

When a defendant does not take action at trial regarding a violation of a ruling on a motion in limine, they waive any error. *State v. Latham*, 366 N.W.2d

---

[6] Prior to recent amendments to Iowa Code section 814.7, Iowa courts addressed unpreserved hearsay claims on direct appeal in the context of ineffective-assistance-of-counsel claims. *See, e.g.*, *State v. Tompkins*, 859 N.W.2d 631, 634 (Iowa 2015) (evaluating counsel's failure to object to potential hearsay statements under an ineffective-assistance-of-counsel rubric). However, section 814.7 now limits ineffective-assistance-of-counsel claims to postconviction-relief proceedings, and we cannot evaluate such claims on direct appeal. *See State v. Davis*, 971 N.W.2d 546, 555 n.2 (Iowa 2022) ("Section 814.7 precludes relief on direct appeal for Davis's ineffective-assistance claim . . . . That claim can only be pursued through postconviction proceedings.").

181, 183 (Iowa 1985). "To hold otherwise would permit a defendant to take a chance with the jury, holding a claimed error in reserve in case of conviction." *Id.* (citation omitted).[7] Wemark's failure to take any action at trial constituted a waiver of any error on the issue.

**AFFIRMED.**

---

[7] Wemark's cited authority addresses the preservation of error on a ruling of admissibility "beyond question" under a motion in limine; it does not address whether testimony or argument violates the ruling or if the court offered an appropriate remedy.