# IN THE COURT OF APPEALS OF IOWA

No. 23-1661
Filed January 24, 2024

**IN THE INTEREST OF K.P.,**
**Minor Child,**

**C.D., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**

        Britt Gagne of Gagne Law Office, Des Moines, for appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Shireen L. Carter of Juvenile Public Defender, Des Moines, attorney and

guardian ad litem for minor child.

        Considered by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

An incarcerated mother appeals the termination of her parental rights to K.P. (born 2019). About a year after K.P. was born, the mother left K.P. with paternal grandparents before she was jailed in a pending criminal case. In total, the mother's criminal history included convictions for drug offenses, misdemeanor theft, fleeing custody, and the probation violation that led to her prison sentence.

The Iowa Department of Health and Human Services (HHS) became involved in 2022, while the mother was in a work-release facility. The mother agreed to a safety plan by which K.P. would stay with the paternal grandparents, but the grandfather's drug use later led to formal removal. By the time of the formal removal, the mother had absconded from work release, relapsed on methamphetamine, and was evading an arrest warrant. K.P. was eventually adjudicated a child in need of assistance and placed in foster care. By the time of the disposition hearing, the mother was in jail. And by the review hearing, she was in prison—where she remained as of the termination trial, with a release date well past the permanency guidelines.

The mother's substance-abuse history included frequent methamphetamine use, less frequent marijuana use, and (according to her) one-time use of heroin—with methamphetamine use "daily" at its peak. The mother reported her only lengthy periods of sobriety since age eighteen have been while incarcerated.

Although the mother did not successfully complete any drug-treatment or mental-health programs before prison, she has taken advantage of all or nearly all programming available to her while incarcerated. She also had positive weekly

visits with K.P. at the prison. On an occasion recent to the termination trial, she arranged to celebrate K.P.'s birthday with cupcakes, ice cream, and root beer.

The mother hoped for parole within approximately six months following the termination trial, but that was not guaranteed. She also acknowledged that, for more than two years, she had not had unsupervised visits—or any home visits— with K.P., given her incarceration. And she candidly explained to K.P.'s guardian ad litem (GAL) on cross-examination that, while she was asking the court for more time, she understood "it's not fair for [K.P.] because he's young and sense of stability is what's needed for them at that age." She strongly and repeatedly, both orally and in writing, expressed to the court her desire to reunify with K.P.

An HHS worker testified that, even if the mother was paroled as she hoped, she would need to demonstrate a period of sobriety in the community before she was a safe placement. The worker also emphasized the mother had been on warrant status for a significant period and left K.P. with the grandparents even before that. The worker also testified K.P. was doing well in his placement, with an "astronomical" improvement in his speech abilities from the time of removal to present. And the worker generally agreed the mother had met case-plan expectations to the extent possible while incarcerated.

The juvenile court credited the mother for offering "very honest, thoughtful, and heartfelt kind of statements about what's going on and what you need." The court found from the mother's testimony that "it [was] obvious [the mother] loves [K.P] and regrets her decisions that led to her incarceration." The court also recognized the mother's candor in acknowledging she failed to rehabilitate in the past, despite promising she will do better in the future. And the court noted that all

parties, including the mother, agreed the foster parents were providing excellent care for the child and could provide a safe and stable home if parental rights were terminated.

At trial, the State and HHS recommended termination of parental rights. As did K.P.'s combined GAL and attorney. Like the juvenile court, the GAL credited the mother's forthright testimony but emphasized K.P. could not be safely returned now or within another six months. The GAL also described how she appreciated the mother's honest answer that K.P. should not have to wait for stability.

After considering the evidence and recommendations, the juvenile court terminated the mother's parental rights to K.P. (The court also terminated the father's parental rights, but they are not at issue here.) The mother filed an untimely appeal, and the supreme court granted a delayed appeal before transferring the case to our court for resolution.

We review termination-of-parental-rights proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.*

In her petition on appeal, the mother concedes the grounds for termination under Iowa Code section 232.116(1)(f) (2023). But she goes on to complain the juvenile court "fail[ed] to take [her] at her word regarding her ability to be successful in remaining substance free when released and in the community." This is no basis for reversal. A fact finder is free to believe all, some, or none of any witness's testimony. *Cf. State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the

evidence as in its judgment such evidence should receive."). And thus the juvenile court was entitled to doubt the mother's speculation about future sobriety and believe the HHS worker's testimony the mother would need to demonstrate a period of sobriety in the community after parole before she could safely provide unsupervised care. Our cases similarly recognize a parent without progression to unsupervised visits is not likely to safely resume immediate care of a child. *See, e.g.*, *In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care.").

To the extent the mother intended to make a best-interests challenge, we question whether the issue heading and argument in her petition adequately present the issue for our review. Assuming the issue is before us, we consider "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Our de novo review of the record convinces us termination is in the best interests of K.P. given the mother's incarceration, her inability to immediately resume care even after release, and K.P. being out of her care the majority of his life. *See id.* § 232.116(2)(a) (noting we may weigh whether the parent's ability to provide for the child has been impacted by the parent's "imprisonment for a felony"). If the mother had not left K.P. to the grandparents while facing incarceration and had not chosen to evade arrest and use methamphetamine rather than reunite when given the opportunity, this case might have been a closer question. We also recognize all parties agree K.P. is well-

integrated into the foster family, which facilitates connections with K.P.'s siblings. *See id.* § 232.116(2)(b). We share the juvenile court's view K.P. "should not have to wait longer for permanency" and termination is in K.P.'s best interests. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

The mother also asserts her bond with K.P. should thwart termination. Section 232.116(3)(c) allows the juvenile court to decline termination if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." A parent resisting termination has the burden to prove this permissive exception by clear and convincing evidence, and our case law recognizes that—without more—neither a parent's love nor the mere existence of a bond is enough to prevent termination. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *D.W.*, 791 N.W.2d at 709. We agree with the mother she has a bond with K.P. But we also agree with the juvenile court's observation that any bond was undermined by the mother leaving then-one-year-old K.P. with the grandparents even before HHS involvement, and that damage was compounded by the mother's absences due to jail, prison, and evasion of law enforcement while she had an active warrant. We consider the bond in context of the unique circumstances of the case and K.P.'s best interests. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). Any potential detriment caused to K.P. by severing the bond is outweighed by the need for stability, particularly in light of K.P. thriving in foster care. We affirm the juvenile court's decision to not apply this exception.

Last, we acknowledge the State's response proactively arguing the mother's petition on appeal did not adequately raise an issue related to a six-month extension or establishing a guardianship in lieu of termination. We have carefully reviewed the mother's petition and conclude neither of those issues is adequately briefed so as to warrant review by our court. We do not fault the State for its briefing, given the potential consequences of leaving an issue unaddressed. But, as we have held before, "sprinkled mentions of an issue" are insufficient to raise legal claims for our consideration. *In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023); *accord In re B.D.*, No. 23-0105, 2023 WL 2671958, at *1 (Iowa Ct. App. Mar. 23, 2023).

**AFFIRMED.**